MAXWELL and another, Respondents, vs. FINK, Executrix, Appellant.*

*April 3—May 5, 1953.*

---

* Motion for rehearing denied, with $25 costs, on July 3, 1953.

For the appellant there was a brief by *Dougherty, Arnold & Waters* of Milwaukee, and *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, and oral argument by *Suel O. Arnold* and by *Harry F. Knipp* of Janesville.

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

CURRIE, J. Counsel for the defendant raise the following issues on this appeal:

(1) Was it error for the trial court to permit the plaintiff to introduce evidence as to the improper use of the flaps on the airplane?

(2) Was there credible evidence to sustain the findings of the jury that Howard R. Fink was causally negligent with respect to the use of the flaps?

(3) Was it error for the trial court to permit witnesses to testify as to the position of the flaps of the plane after the accident, which witnesses did not see the plane until after it had been moved to the Janesville airport, over the objection of counsel for defendant that no proper foundation had been laid to establish that the plane was then in the same condition in which it was immediately following the crash?

(4) Was it error to permit the witness Maugeri, an employee for the civil aeronautics board (hereinafter referred to as "C. A. B."), to refresh his memory in testifying?

(5) Was the finding of the jury based upon speculation and conjecture?

(6) Did Howard R. Fink exercise the skill and ability which he actually possessed in operating the plane as he took off from the Janesville airport?

The plaintiffs' complaint alleged that Howard R. Fink, in attempting to take off from the Janesville airport, operated his plane in a negligent and careless manner in several specified respects. There was no specific allegation which made any mention of the use of the flaps, but the third ground of negligence alleged was:

"That he failed to so operate the airplane so as to gain sufficient altitude to clear trees in his path."

A short time prior to the trial, counsel for the defendant held an adverse examination of Mrs. Maxwell and asked her in what respects she claimed her brother was negligent in operating the plane when taking off from the Janesville airport, and in her answers to such questions she made no reference to any improper use of the flaps. At the trial when plaintiffs' counsel attempted to question Mrs. Maxwell and other witnesses with respect to Howard R. Fink's use of

the flaps of the plane in taking off from the Janesville airport
defendant's counsel objected on the ground that the complaint
did not allege any improper or negligent use of the flaps.
The trial court overruled these objections, being of the opin-
ion that the afore-quoted third ground of negligence stated
in the complaint, that of failing to operate the plane so as to
gain sufficient altitude to clear the trees, was broad enough
to include negligent or improper use of the flaps.

On this appeal defendant's counsel strenuously urge that
they based their preparation for trial on the specific allega-
tions of negligence contained in the complaint and on the
testimony given by Mrs. Maxwell at her adverse examina-
tion, and, in view of the fact that Mrs. Maxwell made no
mention therein of any improper use of the flaps, counsel
for the defendant were taken by complete surprise when such
testimony was offered and therefore it was error for the trial
court to have received such testimony.

The testimony disclosed that the position of the flaps of
the plane was controlled by a lever situated between the pilot
and the passenger occupying the front seat of the plane.
When the flaps were in a horizontal position this control
lever was pushed forward almost horizontal with the floor
of the plane. In order for the pilot to lower the flaps from
the horizontal position it was necessary for him to reach
down and take hold of the lever and press a spring button
on the same and pull the lever back and up. There were
two notched positions into which the lever could be pulled.
For the "half flaps" position the lever was pulled up so that
it formed an angle of about 45 degrees with the floor, and
for the "full flaps" position (being that of having the flaps
lowered to the lowest possible position), the lever was pulled
into the last notch so as to be practically perpendicular with
the floor. In taking off, a plane gains altitude chiefly from
speed, although the tilting down of the flaps, if the same
speed could otherwise be maintained, would also aid in ob-

taining altitude. However, having the flaps at the "full flaps" position acts as a brake and reduces speed, and this position of the flaps is recommended for use only in landing a plane when the objective is to reduce speed, and never in taking a plane off the ground where speed is all-important in gaining altitude.

With these facts in mind it would seem clear that the act of an operator of a plane in controlling the position of the flaps is part of the management and control of the plane. This being so, evidence with respect to the position in which Howard R. Fink had the flaps at the time of taking off at the Janesville airport was clearly admissible under the allegation of negligence relating to the operation of the plane so as to gain sufficient altitude to clear the trees.

Apparently it is the theory of counsel for defendant that an adverse examination of the plaintiff in a tort action for negligence serves the same purpose as a motion to make an allegation of negligence in the complaint more definite and certain. This seems to be counsel's position because of their argument that they were taken by surprise at the trial when evidence was offered as to the position of the flaps inasmuch as Mrs. Maxwell had failed to mention the flaps at all in her testimony at the adverse examination in which she was asked to specify in what respects she claimed her brother was negligent in operating the plane at the time of the take-off.

Counsel for the defendant had the right to use such questions and answers of the adverse examination in attempting to impeach Mrs. Maxwell's testimony at the trial to show that she had testified differently at the trial than at the adverse examination. Other than this we do not consider her adverse examination to have been of any legal significance and certainly did not preclude her counsel from introducing testimony at the trial as to the improper use of the flaps. Counsel for plaintiff, in an action for damages for personal

injury based upon negligence, has the right to prove the negligence of the party alleged to have caused the injury by witnesses other than the plaintiff. Furthermore, the reported decisions of negligence cases abound with instances where plaintiffs have recollected additional facts at the time of trial beyond those testified to at an adverse examination; and of plaintiffs who have given testimony at the trial which directly conflicted or contradicted testimony given at their adverse examination. In the absence of established perjury, such conflicting testimony always has been held to present a jury issue as to its weight with the members of the jury free to accept whichever of the two versions of the plaintiff's testimony they believe to be true.

Counsel for the defendant, not having moved to make more definite and certain that allegation of the complaint which alleged failure of Howard R. Fink to so operate the plane as to gain sufficient altitude to clear the trees, the plaintiff was free at the trial to offer any evidence bearing on control and management of the plane covered by such general allegation.

Defendant's counsel contend that there was no credible evidence to sustain the finding of the jury that Howard R. Fink was negligent with respect to the manner in which he used the flaps at the time of take-off. Mrs. Maxwell testified at the trial that her brother at the time of taking off pulled the lever back that was between him and her before starting the plane down the runway, and that such lever "was perpendicular." From other testimony in the record the jury had the right to conclude that such lever was the one which controlled the flaps. Several witnesses testified that after the crash the flaps were in the "full flaps" position. There is no dispute in the testimony but that it was improper to have the flaps in the "full flaps" position in taking off because the flaps, when in that position, retarded speed and tended to prevent the plane from gaining altitude. All of this evidence

was amply sufficient to sustain the finding of the jury with respect to the improper use of the flaps.

Complaint is made that the trial court permitted the witnesses Ralph Fink and Anthony Maugeri to testify as to the position of the flaps of the plane after the crash over the objection of defendant's counsel that no proper foundation had been laid to establish that the flaps of the plane were then in the same condition that they were immediately following the crash. After the accident, one Williams came with an auto wrecker, which consisted of a crane mounted upon a motor truck, and he placed a canvas sling around the cabin part of the plane and attached the same to the crane. By use of the crane the plane was raised off the ground and in such position he transported the plane to the Janesville airport and placed it behind a hangar. Williams testified that he did not believe that he put any part of the sling, or mechanism of his wrecker, on the flaps, and he knew of no change made in the position of the flaps. As soon as the plane was unloaded at the hangar the sheriff's department immediately roped off the area around the plane and guarded it so as to keep people outside of the roped-off area until after Maugeri arrived and made his inspection on August 5, 1951.

Ralph Fink was the son of Howard R. Fink, and like his father also was a licensed pilot. Ralph arrived at the Janesville airport four or five hours after the crash and examined the plane in the roped-off area and testified that the flaps were then in the full-brake position. Maugeri is an employee of C. A. B., a licensed pilot, and an aviation safety engineer who has had twenty-one years of operating commercial planes. He testified that when he inspected the plane on August 5, 1951, in the roped-off area at the Janesville airport the flaps were then in the "full flaps" position.

The foregoing testimony was sufficient to establish that the flaps on the plane were in the same position at the time Ralph Fink and Maugeri examined the plane as they were imme-

diately following the crash, and it was not necessary for any further foundation to be laid in order to establish such fact as a condition precedent to examining these two witnesses with respect to the position of the flaps as observed by them at the time of making their inspections after the crash.

Sec. 107 (e) of the Civil Aeronautic Act of 1938, 49 USCA, sec. 581, provides in part as follows:

"No part of any report or reports of the former air safety board or the civil aeronautics board relating to any accident, or the investigation thereof, shall be admitted as evidence *or used* in any suit or action for damages growing out of any matter mentioned in such report or reports." (Italics supplied.)

When Maugeri was questioned with respect to the position in which the flaps were at the time he inspected the plane on August 5, 1951, he testified that he had no independent recollection without referring to the report he had made to C. A. B. When counsel for the plaintiff asked Maugeri to refresh his memory from a photostat of his report to C. A. B., defense counsel objected to this being permitted on the ground that to do so would violate the above-quoted federal statute. The trial court overruled the objection and permitted Maugeri to refresh his memory from the photostat of the report, and, after doing so, he testified as to the flaps being in the "full flaps" position. The United States district court for the Southern district of New York in the case of *Ritts v. American Overseas Airlines, Inc.* (D. C. N. Y. 1947), 97 Fed. Supp. 457, 458, had before it this same statute, and stated in its opinion with respect thereto as follows:

"The reason for the prohibition in respect to the use of 'reports' of the board most likely is based on the fact that the report would contain findings and conclusions, the receipt of which at a trial might be prejudicial to a party who had no part in the investigation of the board and no opportunity to be heard by the board. That same problem would not be presented where a witness, being examined in the trial of

the action or before the trial, is confronted with his testimony given at the investigation in order to refresh his recollection or impeach him as a witness."

Keeping in mind the legislative intent of the statute as construed in *Ritts v. American Overseas Airlines, Inc., supra,* we hold that it was not a violation of such statute to permit the witness Maugeri to refresh his memory from the photostatic copy of his C. A. B. report. This did not permit the report to be *"used"* in the sense prohibited by the statute.

We cannot agree with the contention made that the verdict of the jury was based upon conjecture and speculation. It is true that evidence on the part of the defendant did suggest other things besides the use of the flaps which might have caused the plane to fail to gain altitude to clear the trees. However, there was no showing that any of these other things did occur, while there is positive testimony that full flaps were improperly used with the result that the speed of the plane was retarded thereby and prevented it from gaining the necessary altitude to clear the trees.

The last contention made is that there is no credible evidence in the record to establish that Howard R. Fink failed to exercise the judgment and skill which he actually possessed in piloting his plane at the time of the take-off. The trial court applied to this aviation case the host-and-guest rule which has long obtained in Wisconsin automobile cases. The jury was therefore instructed as follows:

"When the guest entered the airplane of the host she accepted the pilot with his habits of piloting then known to the guest, and with the skill or lack of skill, the experience or lack of experience, and with the judgment or lack of judgment in operating or managing the airplane actually possessed by the pilot, whether known or unknown to the guest. The guest does not have a right to demand of the host a degree of skill and judgment for the security of the guest which the host is unable to exercise for his own protection. The host satisfies the duty which he owes to his guest if he

uses in a conscientious manner such skill and judgment as he actually possesses and is capable of exercising in regard to the operation of his airplane.''

Because Howard R. Fink was deceased the trial court also properly instructed the jury that it was presumed that he exercised ordinary care for his own safety, which presumption was rebuttable and disappeared if there was credible evidence in the case reasonably tending to rebut and overcome it. See *Carlsen v. Hardware Mut. Casualty Co.* (1949), 255 Wis. 407, 39 N. W. (2d) 442.

Both of Howard R. Fink's sons, Ralph Fink and Lee Fink, were licensed pilots, and both testified that they had carefully instructed their father on the proper use of the flaps and the proper position of the same when taking off. Therefore, Howard R. Fink, when he used full flaps in taking off just prior to the crash, failed to observe the instructions which his two sons had so carefully given him. This credible testimony amply supports the finding of the jury that Howard R. Fink did fail to "exercise ordinary care not to increase the danger assumed by the plaintiff, Dorothy E. Maxwell, upon entering his airplane, or add thereto or create any danger with respect to the manner in which he used the flaps on the airplane."

*By the Court.*—Judgment affirmed.