111 So.2d 82 (1959)
Lee RATNER and Harry James Johnson, Appellants,
v.
Wendell P. ARRINGTON and Royal Palm Flying Service, Inc., a corporation, Appellees.
No. 58-335.
District Court of Appeal of Florida. Third District.
April 9, 1959.
*83 Smathers, Thompson & Dyer, Miami, for appellants.
Nichols, Gaither, Green, Frates & Beckham, Miami, for appellee Wendell P. Arrington.
CARROLL, CHAS., Chief Judge.
The appellee Wendell P. Arrington was injured in a collision between a private aircraft in which he was riding and another aircraft. Arrington filed an action for damages in the Circuit Court in Dade County against Lee Ratner and Harry James Johnson, the owner and the pilot respectively of the aircraft in which he was a passenger, and also against Royal Palm Flying Service, Inc., the owner of the other aircraft involved. The complaint charged that negligent operation of the two airplanes caused plaintiff's injuries.
The Ratner party had taken off from North Perry Airport on a business trip. Arrington had been engaged to do certain work for Ratner at a location to which they were proceeding.
The accident occurred in the daytime on December 8, 1955, when the Ratner aircraft was landing at Page Field in Fort Myers. As the Ratner aircraft came in for a landing on an appropriate runway and had "touched down", a "crop duster" aircraft, which was owned and being operated by Royal Palm Flying Service, Inc., started its take-off on an intersecting runway, with the collision resulting. In the Ratner airplane at the time of the collision were the owner Ratner, the pilot Johnson, Arrington and two other passengers.
The trial of the cause before a jury resulted in a judgment in favor of the plaintiff Arrington against the three defendants for $198,339. Ratner and Johnson appealed.
The assignments of error and the points raised thereon by appellants have been examined and considered in the light of the record, briefs and argument, and are found *84 to be without merit, and the judgment appealed from is affirmed.
Two of the questions raised require some discussion. During the course of the trial one J.T. Watson, an investigator for the Civil Aeronautics Administration, a witness called on behalf of the plaintiff, was allowed to testify as to certain statements made to him by the appellant Johnson, who was the pilot of the Ratner aircraft. He testified Johnson said that he (Johnson) did not make a pattern approach but a direct approach. This portion of Watson's testimony was as follows:
"A. It was on December 8, 1955, approximately two hours after the accident happened, at Page Field in Fort Myers, Florida. I interviewed Mr. Johnson as soon as I got there; and I asked him the details of his version of the crash. At that time, particularly, I asked him what type of traffic pattern he had made to Page Field. He told 
"Q. What answer did he give you as to that, sir? A. He told me that he had flown from about four miles south of Alva, where Mr. Ratner had a farm, and he had called in and got clearance for a VFR [visual flight rules] approach in a Control Zone. We drew the flight path out on scratch paper, showing the route that he estimated that he flew; and he said he made a slight correction to line up with the runway, came on in and landed on Runway 22.
"Q. Now, was that his complete statement to you on the occasion of your first interview with Mr. Johnson? A. Practically so. Prior to my leaving to go back to Tampa, I asked him again, and I showed him the sketch I had, if that was his version of it; and at that time he made a slight correction in it, saying he believed he flew a little closer to the airport and made approximately a forty-five degree approach to the approach end of the runway.
"Q. Now, he never did at any time describe to you a complete traffic pattern on the approach to this runway; did he? A. No, he did not."
Appellants contended in the trial court, and argued here, that this testimony was inadmissible under 49 U.S.C.A. § 581 [now § 1441(e)].[1]
That statute, which included provision for C.A.B. investigation of airplane accidents, provided "that no part of any report or reports of the former Air Safety Board or the Civil Aeronautics Board relating to any accident, or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports."
Appellants contend that this court should construe that provision of the federal statute to bar the introduction of the investigator's testimony as above quoted; and as a ground for so contending, appellants, by analogy, point to the Florida case of Stevens v. Duke, Fla. 1949, 42 So.2d 361, which held that § 317.17, Fla. Stat., F.S.A., requiring motor vehicle accident reports to be kept confidential and prohibiting their use as evidence in any trial, operates to exclude testimony by an investigating officer of statements made to him by the parties in the course of the investigation reported.
However, we are not free to place upon the federal statute the interpretation *85 thus contended for by appellants, as we must give effect to the construction given it by the federal appellate courts. See Roberts v. American Nat. Bank, 94 Fla. 427, 115 So. 261, 263; Humphreys v. State ex rel. Palm Beach Co., 108 Fla. 92, 145 So. 858, 861; Cadieux v. Cadieux, Fla. 1954, 75 So.2d 700, 702.
Federal appellate courts have placed a narrow construction on this statutory provision, holding that it was designed to guard against introduction of reports "expressing agency views about matters which are within the function of courts and juries to decide", and to prevent introduction into evidence of "opinions or conclusions about possible causes of the accident or defendant's negligence". The federal courts hold that the statute does not render inadmissible testimony of such an investigating official of statements made to him by a party during the course of the investigation. Universal Airline v. Eastern Air Lines, 1951, 88 U.S.App.D.C. 219, 188 F.2d 993; Lobel v. American Air Lines, 2 Cir., 1951, 192 F.2d 217, 220, certiorari denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703; Israel v. United States, 2 Cir., 1957, 247 F.2d 426, (citing: Ritts v. American Overseas Airlines, D.C.S.D.N.Y. 1947, 97 F. Supp. 457; Tansey v. Transcontinental & Western Air, D.C. 1949, 97 F. Supp. 458); Maxwell v. Fink, 1953, 264 Wis. 106, 58 N.W.2d 415. On that construction of the federal statute, Watson's testimony was admissible, and the learned trial judge properly overruled the objections thereto.
We next consider the contention made by appellants that the court was guilty of prejudicial error in overruling their objections to the use before the jury, by the counsel for plaintiff in their closing arguments, of a placard showing items of damages and suggested amounts to be awarded therefor.[2]
In argument at the close of the trial, appellee's counsel produced and referred to a placard or chart prepared by them. This chart was about two and a half feet wide and three feet high, made of heavy white cardboard. There was written thereon, in bold lettering in black ink appellee's name, age, life expectancy; his medical expenses, including names of hospitals and doctors with amounts set opposite each, and which were sub-totaled. The chart then listed "Pain and Suffering" under which it gave dates showing the period from the accident to date of the trial, and then stated "783 days @ 15", with the amount thus calculated, $11,745. An item of *86 "Physical Disability and Inability to Lead a Normal Life" was similarly treated, as was the item "Loss of Earnings" with a computation on a weekly basis. The chart continued, repeating and treating the same headings as items of future damages. For a better understanding of the appearance and contents of the chart, it is copied into this opinion, as follows:

 Wendell Arrington
Age 43 Expectancy 28.8 yrs.
 To Date
Medical Expense
 Lee Memorial Hosp. 1,211.15
 North Shore Hosp. 20. -
 St. Francis Hosp. 1,227.42
 Mercy Hosp. 1,102.30
 Dr. Warnock 575. -
 Dr. Quillian Jones 240. -
 Dr. Russell 1,290. -
 Dr. Zaydon 1,175. -
 Drs. Leslie & Small (anesthetists) 292.50
 Dr. Ferrer (anesthetist) 172.50
 Dr. Fusco (anesthetist) 30. -
 Nurse Early 661.30
 Nurse Skelton 721.30
 Wheatley Brace Company 55. -
 Drugs & Medicines 470.72
 ________
 9,244.19
Pain and Suffering
 12/8/55-1/30/58 783 days @ 15. 11,745. -
Physical Disability and Inability to
Lead a Normal Life
 12/8/55-1/30/58 783 days @ 5. 3,915. -
Loss of Earnings
 111 weeks @ 125. 13,875. -
 _________
 38,779. -
 Future
10,220 days 28 years
Medical Expense 500. -
Pain and Suffering
 10,220 days 10,220. -
Physical Disability and Inability
to Lead a Normal Life
 10,220 days @ 3 30,660. -
Loss of Earning Capacity
 To age 70 27 years 162,000. -
 __________
 242.159. -

The propriety of the use of a blackboard to illustrate or aid in an argument was recognized, indirectly, by the district court of appeal in the second district in Andrews v. Cardosa, Fla.App. 1957, 97 So.2d 43, 45, where the court held that it was within a trial judge's discretion to deny the use of such an item, saying:
"The denial by the trial judge of the request of plaintiffs' counsel to use a blackboard during final argument for the purpose of illustrating numerous items of damage to the jury, and to give the jury pads of paper and pencils for the purpose of making notes, rested in the sound discretion of the trial judge."
The use of a blackboard or chart in aid of counsel's argument to the jury is permissible when the use thereof is limited so as not to prejudice an opposing party. A distinction should be recognized between a placard or chart which is in evidence or used for evidentiary purposes, such as a chart disclosing objects or places, and a chart or placard which is not evidence but used to illustrate and aid in conveying an argument to the jury. The former may be exhibited throughout the trial or portion thereof in which it is relevant. The latter, that is, the chart used with argument, should be withdrawn from the jury's observation at the conclusion of the argument in which it is employed. Haycock v. Christie, 1957, 101 U.S.App.D.C. 409, 249 F.2d 501; Four-County Electric Power Ass'n v. Clardy, 1954, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191. Also, the chart or placard used in argument should refer only to matters which are in evidence, or to inferences which properly may be drawn from the evidence in the case. See Haycock v. Christie, supra; Clark v. Hudson, 1957, 265 Ala. 630, 93 So.2d 138; Mclaney v. Turner, 1958, 267 Ala. 588, 104 So.2d 315; Kindler v. Edwards, 1955, 126 Ind. App. 261, 130 N.E.2d 491; Four-County Electric Power Ass'n v. Clardy, supra; Arnold v. Ellis, Miss. 1957, 97 So.2d 744; Haley v. Hockey, 1950, 199 Misc. 512, 103 N.Y.S.2d 717; Warren Petroleum Corp. v. Pyeatt, Tex.Civ.App. 1955, 275 S.W.2d 216; Green v. Rudsenske, Tex.Civ.App. 1959, 320 S.W.2d 228; and Annotation, 44 A.L.R.2d 1205. Having regard for such limitations, it may be said that it is within the discretion of the trial court to permit the use of a blackboard, chart or placard before the jury, in *87 illustration and aid of argument of counsel, to show any matter which counsel could state to the jury in proper argument.
It is not the use of a chart or placard which creates the problem but rather the contents thereof.[3] Appellants contend that to show a per diem or other mathematical formula as a suggestion or aid to the jury in determining the amount to award for such items of damages as pain and suffering, disrupted activities or loss of earning capacity is to present to the jury matters which are not in evidence and are not supported by the evidence.
It has long been the rule in this state and elsewhere that the amount to be allowed as compensation for pain and suffering must be determined by the trier of the facts based upon the evidence submitted, but the law furnishes no yardstick which may be applied to the evidence to indicate the amount of such damages.
The question of whether it is error to permit an attorney in argument to the jury to suggest, as a basis for determination of the amount of damages to be allowed for pain and suffering, that a designated sum may be arrived at by considering a stated figure per day or per month or other period, has not been decided in this state. In Braddock, v. Seaboard Air Line R. Co., Fla. 1955, 80 So.2d 662, where the Supreme Court held that the rule for reduction of an award of future damages to present worth was not applicable to future pain and suffering, the court made reference to the problem we have under discussion here, saying (at page 668):
"* * * Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right. The problem is often further complicated by the fact that the pain and suffering are yet to be suffered and thus even further removed from exact calculation and certain measurement. But such further uncertainty does not change the problem from one of judgment to one of calculation. It still rests with the enlightened conscience of the jury. * * *"
However, further in the opinion in the Braddock case the court showed that the precise question under consideration here was not raised or decided in that case, saying:
"* * * The method of counsel's argument to the jury by which the damages are broken down into per diem assessment was neither challenged nor disapproved in the court below, and we are not required to pass upon it here. If it is considered to be deceptive and to produce an excessive verdict, the court, in a proper case, and in the exercise of sound discretion to prevent injustice by excessive verdicts, may so find and order an appropriate remittitur. * * *"
Later, on a second appeal in the Braddock case, Fla. 1957, 96 So.2d 127, 129, the *88 Supreme Court implicitly endorsed the use of the per diem argument by affirming a jury verdict for $248,439, which coincided exactly with the aggregate of the plaintiff's demands as set out on a chart similar to the one involved in this case.[4]
In recent years the question has received consideration in a number of other jurisdictions. The weight of authority favors allowing use in argument of a mathematical formula such as suggesting amounts on a per diem basis when damages for pain and suffering are involved. Clark v. Hudson, supra, 1956, 265 Ala. 630, 93 So.2d 138; Mclaney v. Turner, supra, 1958, 267 Ala. 588, 104 So.2d 315; Aetna Oil Co. v. Metcalf, 1944, 298 Ky. 706, 183 S.W.2d 637; Four-County Electric Power Ass'n v. Clardy, supra, 1954, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191; Arnold v. Ellis, supra, Miss. 1957, 97 So.2d 744; A.B.C. Storage & Moving Co. v. Herron, Tex.Civ.App. 1940, 138 S.W.2d 211; J.D. Wright & Son Truck Line v. Chandler, Tex.Civ.App. 1950, 231 S.W.2d 786. See Imperial Oil, Limited v. Drlik, 6 Cir., 1956, 234 F.2d 4, certiorari denied 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236; Haycock v. Christie, supra, 1957, 101 U.S.App.D.C. 409, 249 F.2d 501; Kindler v. Edwards, supra, 1955, 126 Ind. App. 261, 130 N.E.2d 491; Boutang v. Twin City Motor Bus Company, 1956, 248 Minn. 240, 80 N.W.2d 30; Flaherty v. Minneapolis & St. Louis Railway Co., 1958, 251 Minn. 345, 87 N.W.2d 633; Haley v. Hockey, supra, 1950, 199 Misc. 512, 103 N.Y.S.2d 717. Contra, Henne v. Balick, Del. 1958, 146 A.2d 394; Botta v. Brunner, 1958, 26 N.J. 82, 138 A.2d 713. But see Ahlstrom v. Minneapolis, St.P. & S.S.M.R. Co., 1955, 244 Minn. 1, 68 N.W.2d 873; Hallada v. Great Northern R. Co., 1955, 244 Minn. 81, 69 N.W.2d 673; Wuth v. United States, D.C.E.D.Va. 1958, 161 F. Supp. 661. See generally Annotation 60 A.L.R.2d 1347; and Law Review discussions: 19 Ohio St.L.J. 780 (1958); 12 Rutgers L.Rev. 522 (1958); 4 Vill.L.Rev. 137 (1958).
Authorities opposing per diem amount arguments as to damages for pain and suffering give varied reasons: (1) that there is no evidentiary basis for converting pain and suffering into monetary terms; (2) that it is improper for counsel to suggest a total amount for pain and suffering, and therefore wrong to suggest per diem amounts; (3) that to do so amounts to the attorney giving testimony, and expressing opinions and conclusions on matters not disclosed by the evidence; (4) that juries frequently are misled thereby into making excessive awards, and that admonitions of the court that the jury should not consider per diem arguments as evidence fail to erase all prejudicial effect; (5) that following such argument by plaintiff, a defendant is prejudiced by being placed in a position of attempting to rebut an argument having no basis in the evidence, with the result that if he does not answer plaintiff's argument *89 in kind he suffers its effect on the jury, but if defendant does answer in kind he thereby implies approval of the per diem argument for damage determination for pain and suffering.
Authorities approving such arguments give numerous reasons: (1) that it is necessary that the jury be guided by some reasonable and practical considerations; (2) that a trier of the facts should not be required to determine the matter in the abstract, and relegated to a blind guess; (3) that the very absence of a yardstick makes the contention that counsel's suggestions of amounts mislead the jury a questionable one; (4) the argument that the evidence fails to provide a foundation for per diem suggestion is unconvincing, because the jury must, by that or some other reasoning process, estimate and allow an amount appropriately tailored to the particular evidence in that case as to the pain and suffering or other such element of damages; (5) that a suggestion by counsel that the evidence as to pain and suffering justifies allowance of a certain amount, in total or by per diem figures, does no more than present one method of reasoning which the trier of the facts may employ to aid him in making a reasonable and sane estimate; (6) that such per diem arguments are not evidence, and are used only as illustration and suggestion; (7) that the claimed danger of such suggestion being mistaken for evidence is an exaggeration, and such danger, if present, can be dispelled by the court's charges; and (8) that when counsel for one side has made such argument the opposing counsel is equally free to suggest his own amounts as inferred by him from the evidence relating to the condition for which the damages are sought.
The items or elements of damages listed on the chart in this case, and which thus were argued to the jury, all were supported by some evidence of established or calculable monetary value, except the elements of "pain and suffering" and "physical disability and inability to lead a normal life". As to those two elements, we are not prepared to hold that it was prejudicial error for the trial court to allow counsel for appellee, in argument to the jury, to suggest an amount which he felt would be proper and reasonable to be awarded as damages therefor. Nor do we hold it was error to include a suggested per diem amount approach to such an award.
True, the latter point is one which presently is giving courts much concern. Recent holdings, for and against the allowance of such arguments, are not grounded on reasons of sufficient force to compel the decision either way. The ultimate course of judicial opinion on the point is not yet discernible. Therefore, in approving the practice now we do not purport to foreclose the question. We do, however, now hold that the trial judge did not abuse his discretion in overruling appellants' objections to the use of the chart and the argument of appellee's counsel based on the chart.
In so holding we give due regard to the proposition that "pain and suffering have no market price." But the very absence of a fixed rule or standard for any monetary admeasurement of pain and suffering as an element of damages supplies a reason why counsel for the parties should be allotted, on this item of damages, their entitled latitude in argument  to comment on the evidence, its nature and effect, and to note all proper inferences which reasonably may spring from the evidence adduced. See 53 Am.Jur., Trial, § 485. And we take judicial notice (Courtney v. Central Trust Co., 112 Fla. 298, 150 So. 276; 31 C.J.S. Evidence § 49, p. 617) of the custom, which has been in effect for some years in trials of such cases in Dade County, for attorneys to use damage charts in arguments to the jury and to submit per diem amount arguments with reference to such elements of damages as pain and suffering, inability to lead a normal life and loss of earning capacity. See Four-County Electric Power Ass'n v. Clardy, supra, *90 1954, 221 Miss. 403, 73 So.2d 144, 152, 44 A.L.R.2d 1191, 1203.
Affirmed.
PEARSON, J., and FLOYD, ROBERT L., Associate Judge, concur.
NOTES
[1] That point had important bearing on the question of whether negligent operation of the Ratner airplane combined with the negligence of the duster airplane and was a contributing proximate cause of the collision, in view of the conflict in the testimony as to whether the former made a required pattern approach or made a straight-in landing approach, and the evidence that the duster airplane pilot looked out for and could have observed an airplane approaching in the required landing pattern, but did not see the Ratner airplane coming into the field.
[2] The objections as referred to, made by defendants' counsel at the trial, were as follows: "Mr. Dyer: They have, as a matter of fact; and in the interest of not interrupting them at the time of the argument, I would like to make an objection at this time to the use of a blackboard with elements of damage and projected injuries based upon per diem or based upon what the plaintiff's counsels' idea is as to the amount of damages; and I make that objection for this reason, your Honor: Of course it is not evidence, and while I realize the plaintiff's counsel will tell them that it is not evidence, it is nevertheless a pictorial view that the jury is given at the end of the case which they look at just before they retire to the juryroom on rebuttal argument, and it rivets their attention to a matter which even though it is explained as not in evidence, is bound to be impressed upon their minds vividly, and I think it is unfair, an unfair way to deal with the jury. * * * Mr. Dyer: May it please the Court, I would like to renew the objection that I made at the close of the case before the final summations to the jury in connection with the use of a chart by counsel for the plaintiff in suggesting the various elements of damages, in putting his figures on those elements on a per diem basis and drawing a pictorial display for the jury, which I think your Honor observed the number five juror, for instance, copying everything down as the argument went along. Even though the chart is now removed, it has been given them a definite impression that overshadows everything else in this case, and for that reason we think it is prejudicial, that it doesn't bring the jury to a focus of the entire evidence of the case, and we therefore respectfully move the Court for a mistrial."
[3] This placard offered opportunity to contend that certain of the items were overlapping, when separate figures were suggested thereon for such items as (1) "pain and suffering", (2) "physical disability and inability to lead a normal life", and (3) "loss of earning capacity". The figures thus used could represent substantial duplication and overlapping of amounts, because each of the three topics just mentioned could embody elements of the others. On that feature we do no more here than suggest the problem it presents, as the arguments advanced by appellants did not single out and call for a decision on that feature. See discussion of this question in Seaboard Air Line R. Co. v. Braddock, Fla. 1957, 96 So.2d 127, 129 (dissenting opinion, Ogilvie, A.J.).
[4] The affirmance in the Braddock case was without opinion, but a dissenting opinion set out the chart used in argument in that case, as follows:

 "`Mike' Braddock
 "Age 9 Expectancy 56 years
 Pain and Suffering to date 395 days
 Experience of accident 5,000.00
 Hospital 3/25-4/5/52 1,200. -
 First 30 days at home 300. -
 To date 353 days 700. -
 Inability to Lead Normal Life
 3/25-5/31/52 crutches 340. -
 6/1-10/31/52 pylon 459. -
 11/1/52 to date artificial limb 348. -
 Humiliation and Embarrassment 1,915. -
 _________
 10,262. -
 20,440 days Future 56 yrs. 
 Medical
 Checkup by doctor once a year 440. -
 Artificial legs 3,600. -
 Repairs and Maintenance 2,640. -
 Stump socks 985. -
 Extra pants, shoes and socks 4,400. -
 Limb adjustment every 2 weeks 2,912. -
 _________
 14,977. -
 Pain and Suffering 20,440 days 20,440. -
 Humiliation and Embarrassment
 20,440 days 40,880. -
 Inability to Lead a Normal Life
 20,440 days 40,880. -
 Loss of Earning Capacity
 5500 × 50% x 56 121,000. -
 __________
 Total 248,439.