# Richmond

John W. Walthew v. B. W. Davis, Sheriff, Administrator of the Estate of Helen Elizabeth Taylor, Deceased.

January 18, 1960.

Record No. 5004.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and l'Anson, JJ.

The opinion states the case.

*David Nelson Sutton* (*Sutton & Causey*, on brief), for the plaintiff in error.

*C. O'Conor Goolrick* (*C. Berkley Lilly; Goolrick, Ashby & Whitticar*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Helen Elizabeth Taylor, while riding as a guest in an airplane operated by John W. Walthew, was killed when the airplane in attempting to take off at the Shannon Airport near Fredericksburg crashed into a building adjacent to the runway. In an action for wrongful death, B. W. Davis, sheriff, administrator of the estate of the decedent, recovered a verdict and judgment of $10,000 against Walthew, hereinafter designated as the defendant, who has appealed.

The primary contention of the defendant is that the lower court erroneously ruled and instructed the jury that he was liable to his guest passenger for ordinary negligence rather than gross negligence. Complaint is also made of the lower court's rulings on other instructions and its exclusion of certain evidence offered by the defendant.

In light of the verdict for the plaintiff the facts may be stated thus: On December 22, 1956, the defendant, who was at that time an aircraft mechanic employed near Richmond and held a pilot's license, rented an airplane at Richmond and invited Helen Elizabeth Taylor, her aunt and the latter's son to fly with him from Alexandria, Virginia, to Beckley, West Virginia. After finding the weather reports to be favorable, the defendant left Richmond at 1:30 p. m. and flew to Alexandria. Because of a foggy condition he decided not to land in the vicinity of Alexandria and started back toward Richmond. When he reached Fredericksburg he found the weather clear and landed at the Shannon Airport. He telephoned Miss Taylor, suggesting that she and the other intended passengers drive by automobile to the Shannon Airport, from which he would take them by airplane to Beckley. In accordance with this plan these parties

reached the airport about 5:30, the baggage was loaded on the airplane, and the passengers got aboard. At that time it was dark, some ground fog was rising, and visibility was not more than half a mile. The defendant was warned by the manager of the airport that "the ground fog was moving in and that it looked like it was going to be rough." He taxied the airplane to the north end of the field, intending to take off in a southerly direction. The runway is about 3000 feet long, 300 feet wide, with lights 100 feet apart marking the lateral boundaries. Only the alternate side lights were then burning.

The defendant, who was not familiar with the landing field, had been told that the surface along the eastern side of the runway, that is, to his left, was more suitable for a take-off. Before starting down the runway for the intended take-off he lined his course by what he thought were two boundary lights marking the eastern edge of the runway to his left. He speeded up the engine and had gone about 400 feet down the runway on the intended take-off when the airplane, without leaving the ground, ran beyond the side lines of the runway and struck an unlighted power house which stood about 26 feet east of the eastern line of the runway. It turned out that the defendant had not taxied straight down the runway and that one of the lights by which he had set his course was not, as he thought, a boundary light on the runway, but was a light in a dwelling located beyond the eastern line of the runway and near the power house with which the airplane had collided. After the impact the defendant observed, for the first time, that fog had collected on the windshield, obscuring his vision and preventing his seeing the building. In the collision Miss Taylor sustained injuries which shortly thereafter caused her death.

The measure of care required of a host operator of an airplane to his guest passenger has not been previously presented to this court. In *Hall* v. *Payne*, 189 Va. 140, 52 S. E. 2d 76, we affirmed a judgment based upon a verdict entered at the trial in which the jury had been instructed without objection that the operator host of an airplane owed "ordinary care," which was defined as "the degree of care that a competent, prudent and qualified pilot would use; and that if he 'wilfully and voluntarily' operated the plane in a careless or reckless manner," he was guilty of negligence. 189 Va., at page 144, 52 S. E. 2d, at page 78. The propriety of this instruction was not questioned on appeal.

The defendant's argument that the gross negligence rule should be applied in the present case runs thus: It is generally held that in the absence of a statute controlling the operation of airplanes, the liability of an operator will be determined under ordinary rules of negligence (6 Am. Jur., Rev., Aviation, § 67, 1959 Cum. Supp., p. 13; 2 C. J. S., Aerial Navigation, § 19, p. 907; *Wilson* v. *Colonial Air Transport,* 278 Mass. 420, 180 N. E. 212, 83 A. L. R. 329); in Virginia, beginning with *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, decided in 1931 and followed in many subsequent cases, the principle was laid down that a host driver of an automobile is liable to his guest passenger for gross negligence; this principle was incorporated in our statute law by the Acts of 1938, ch. 285, p. 417 (now Code, § 8-646.1),[1] and should be applied to the operation of aircraft.

As a corollary to this contention it is further argued that in *Boggs* v. *Plybon, supra,* we followed the principle enunciated in *Massaletti* v. *Fitzroy,* 228 Mass. 487, 118 N. E. 168, L.R.A., 1918C, 264, Ann. Cas. 1918B, 1088, that the liability of one who undertakes a "gratuitous transportation" is the same as that of a "gratuitous bailee," that is, that gross negligence must be shown. 157 Va., at page 35.

There are two answers to this contention. In the first place, it is for the General Assembly and not the courts to say whether the principles embodied in Code, § 8-646.1, relating to the operation of a motor vehicle,[2] should be extended to the operation of an airplane. Although more than twenty years have elapsed since the adoption of what is now Section 8-646.1, the General Assembly has not seen fit to extend its provisions to airplanes. In the meanwhile, it has adopted comprehensive provisions dealing with the operation of aircraft without incorporating therein a guest statute similar to Section 8-646.1. (See Code, § 5-1 *ff.*) The presumption, then, is

---

[1] "§ 8-646.1. *Liability for death or injury to guest in motor vehicle.*—No person transported by the owner or operator of any motor vehicle as a guest without payment for such tranportation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator."

[2] The defendant does not contend that the statute as now worded applies to airplanes. That the definition of a motor vehicle does not include an airplane, see Code, §§ 46.1-1(15) and 46.1-389(d), as amended. See also, 6 Am. Jur., Rev. Aviation, § 18, p. 13; *McBoyle* v. *United States,* 283 U. S. 25, 51 S. Ct. 340, 75 L. ed. 816.

that the General Assembly intends that the provisions of the automobile guest statute should not apply to the operation of aircraft.

In the next place, notwithstanding the gratuitous nature of the undertaking, there are obvious and marked differences between transportation by automobile and by airplane and the hazards and risks incident to each. What would be slight negligence in the operation of an automobile might be gross negligence with disastrous results in the operation of an airplane. A guest displeased with and alarmed at his host's negligent operation of an automobile may get out and take to the highway on foot. A guest in an airplane has no such election, but must suffer the consequence of his host's negligence which is frequently fatal.

Accordingly, we hold that because of these and other differences in the two modes of travel and the incidental hazards and risks involved, in the absence of statute, the principle of *Boggs* v. *Plybon, supra,* defining the liability of a host to his guest traveling by automobile should not be applied to travel by aircraft.

While there are few cases dealing with the precise question the majority view is in accord with that expressed by us. As is said in 6 Am. Jur., Rev., Aviation, § 67, 1959 Cum. Supp., p. 13, "[I]n the absence of statutes establishing a different rule, it has generally been held that the liability of the owner or operator of an airplane to a guest injured or killed therein will be determined under ordinary rules of negligence applicable in other situations. Under this general rule, such an owner or operator will usually be liable only for ordinary negligence, that is, he will be bound to exercise only the degree of care expected of the 'ordinary reasonable man.' "

See also, *Wilson* v. *Colonial Air Transport, supra* (180 N. E., at page 214); *Rennekamp* v. *Blair*, 375 Pa. 620, 101 A. 2d 669, 673; *Maxwell* v. *Fink*, 264 Wis. 106, 58 N. W. 2d 415, 416; *Re Hayden's Estate*, 174 Kan. 140, 254 P. 2d 813, 816, 36 A. L. R. 2d 1278; *Grimm* v. *Gargis*, Mo., 303 S. W. 2d 43, 47; *Farish* v. *Canton Flying Services*, 214 Miss. 370, 58 So. 2d 915, 918. *Contra, Sammons* v. *Webb*, 86 Ga. App. 382, 71 S. E. 2d 832, 839; *Citizens & Southern Nat. Bank* v. *Huguley*, Ga. App., 110 S. E. 2d 63, 65.

In this connection it is interesting to observe that while the Massachusetts court held in *Massaletti* v. *Fitzroy, supra,* that the gross negligence doctrine should apply in the operation of an automobile, it declined to apply the same principle to aircraft in the later case of *Wilson* v. *Colonial Air Transport, supra,* saying, "In this common-

wealth at present there is no statute specifically applicable to the issue of negligence in the operation of aircraft, and the ordinary rules of negligence and due care obtain." 180 N. E., at page 214.

In the present case the lower court properly instructed the jury that the defendant owed his guest "the duty of exercising ordinary and reasonable care to avoid injury to her, that is, the same degree of care for her safety which would be required of any reasonably competent and prudent airplane pilot with regard to a guest in his plane," and that if the jury believed from the evidence that the defendant violated this duty then he was guilty of negligence, and if they found that such negligence was "the proximate cause of the death of Miss Taylor," their verdict should be for the plaintiff.

There is ample evidence to support the verdict based on this instruction. The field was strange to him, the weather was foggy, the visibility poor, and his windshield was so clouded that he could not see through it, yet the defendant attempted to take off. He failed to line up his airplane properly with the lights on the runway, but instead set his course by a light in a dwelling entirely off the runway. According to his own testmony his attempt to follow this light caused his airplane to collide with the power house building, resulting in the tragic death of the plaintiff's decedent.

Complaint is made that the lower court erred in failing to submit to the jury whether the failure to have a light on the power house building was "the proximate cause" or "the sole proximate cause" of the collision. There is no merit in this contention. As has been said, this building stood at least 26 feet beyond the area of the runway and was not within the proper path which the airplane should have followed in its attempt to take off. The proximate cause of the collision was not the fact that the building was unlighted, but the negligence of the defendant in so operating the airplane that it ran off the runway and collided with the building. See *Wyatt* v. *Chesapeake & Potomac Telephone Co.*, 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386, in which we held that the unlawful location of a telephone pole on a portion of the highway was not the proximate cause of the plaintiff's injuries which resulted when the car in which she was a passenger, in the effort to avoid striking another car, ran off the traveled portion of the road and struck the pole.

The final contention of the defendant is that the lower court erred in not permitting his counsel to show on cross-examination that the decedent's mother was the beneficiary in a life insurance policy

on her daughter. This ruling of the court was correct. It is well settled that damages recovered for personal injuries or death caused by the negligence of another cannot be reduced by reason of the fact that the injured party or his estate has been partly compensated for the loss by the proceeds of an insurance policy. The reason for the rule is that one who by his negligence has injured another owes to the latter full compensation for the injury inflicted by him, and payment for such injury from a collateral source in no way relieves the wrongdoer of his obligation. *Burks* v. *Webb*, 199 Va. 296, 304, 99 S. E. 2d 629, 636.

For these reasons the judgment appealed from is affirmed. Since it appears from the record that the final judgment appealed from fails to apportion the damages in accordance with the verdict of the jury, as required by Code, § 8-638, as amended, the case is remanded for the entry of a proper order in this respect.

*Affirmed and remanded.*