178 So.2d 126 (1965)
Richard J. HEDDENDORF, Appellant,
v.
Thomas J. JOYCE, Appellee.
No. 5028.
District Court of Appeal of Florida. Second District.
May 12, 1965.
Rehearing Denied September 16, 1965.
*127 John H. Wahl, Jr. of Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellant.
David L. McCain of Carlton & McCain, Fort Pierce, for appellee.
RAWLS, JOHN S., Associate Judge.
Appellee-plaintiff Joyce filed this suit against appellant-defendant Heddendorf seeking damages as a result of an automobile accident. Trial of the cause resulted in a jury verdict for Joyce in the sum of $25,000. Heddendorf instituted this appeal from final judgment entered thereon.
On this appeal, Appellant poses the following two points:
1. Is the owner of an automobile a guest within the meaning of the guest statute when riding in the car while another person is driving it at the owner's request?
2. Is a "per diem" argument and the use of an accompanying chart delineating purported items of damage proper when employed for the first time in the closing (rebuttal) portion of plaintiff's argument to the jury?
Joyce, who was a regular winter visitor in Florida, and Heddendorf, who lived in Fort Pierce, had been friends for four or five years. On the day prior to the accident, they made a trip in Joyce's automobile from Fort Pierce to Cocoa where Heddendorf wanted to look at some property and a business with a muffler franchise. The two ate dinner in Cocoa and around 8 o'clock P.M. started back to Fort Pierce with Heddendorf driving Joyce's car at Joyce's request. There was conflict as to how much alcohol the two consumed prior to the accident, but several stops were made at bars on the return trip. Around one o'clock in the morning Heddendorf lost control of the car and it finally ended up in the Indian River. Joyce sustained severe injuries as a result of the accident. Prior to submitting the case to the jury, the trial court held, as a matter of law, that Heddendorf was guilty of negligence which proximately caused the accident, and the only issue submitted to the jury concerning liability was whether Joyce was guilty of contributory negligence which proximately contributed to the accident.
It is appellant's position that under the foregoing facts, Joyce was the guest of Heddendorf and thus the elements of gross negligence had to be pleaded and proved. The trial judge rejected this contention by striking, upon appellee's motion, those portions of defendant's answer concerning gross negligence. At the outset, appellant candidly acknowledges that the First District Court of Appeal has squarely held contra to his position in Hale v. Adams,[1] and after analyzing the three appearances of the Hale case in the appellate *128 courts, he concludes that the reasoning expressed by Judge Carroll in his special concurrence in the second Hale case should be adopted by this court. We will not unduly belabor appellant's contentions as to this point. The first Hale opinion was based upon two well established principles of law, viz.: (1) That an automobile and its operation is a dangerous instrumentality, and as between the owner and the operator, who is driving with the owner's knowledge and consent, the relationship of principal and agent exists, and (2) that suits by principals against their agents for negligence are generally allowable. It was upon these basic principles that Sturgis, J., speaking for the First District Court of Appeal rejected the same contentions as here advanced by appellant, reasoning that neither the guest statute nor the doctrine of imputed negligence has any application in an action by a principal against his agent. Appellant insists that such a rule should not be recognized in this jurisdiction and, as one reason, advances the argument that by "* * * shifting the body from one side of the seat to the other Joyce effected a complete metamorphosis in the degree of negligence necessary to be proven." We would be remiss if we did not, in rejecting this argument, observe that such metamorphic transformations are invited by the provisions of the guest passenger statute. For instance, an uncontradicted guest-host relationship existing between two friends who are casually riding through the countryside enjoying the esthetic treats provided by nature may be transformed into a joint venture by the speaking of a few words  such works exchanged between the two at this point accomplishing a metamorphosis such as that envisioned by the appellant without any physical changes of positions of the occupants. Finally, counsel for appellant insists that the cases concerning what he terms as "this problem" leaves an "ordinary country lawyer lost in a fog of juridical philosophy". In passing, we cannot resist the temptation to inquire as to how appellant's counsel has acquired the expert knowledge of how an "ordinary country lawyer" might view this problem. It is our view that the principles of law relied upon and the reasoning stated in the Hale opinions concerning the relationship of the parties which existed at the time of the accident is sound, and we adopt the reasoning and conclusion of our sister court.
Appellant's second point has merit. A brief review of the proceedings had during closing argument is necessary. Plaintiff's counsel in opening his closing argument gave a brief outline  in fact, so brief we might term it a "bikini"  of the damages he was asking the jury to return. The only damages mentioned by him in dollars and cents was the sum of $1,526.70 for hospital and $1,775.00 out-of-pocket expenses for damages to his automobile with the observation that plaintiff was claiming all of "those doctors' bills", loss of income, pain and suffering that had been incurred, his inability to lead a normal life, functional disability and future pain and suffering. He did not assess or suggest any specific sum for the damages claimed other than out-of-pocket expenses, nor proffer any method for the jury to utilize in arriving at its verdict on these elements of damages. At this stage of the argument, such was counsel's prerogative. However, upon rebuttal plaintiff's counsel, for the first time, stated to the jury, "I would like to discuss with you just a minute how this chart shows what we feel comes close to being a true amount of damages in this case," and at this point, for the first time in the trial, produced a chart outlining to the last cent his mathematical computation of each element of damage, totaling the sum of $61,035.96. Plaintiff's counsel then proceeded to hammer home item by item, day by day, pain by pain and hour by hour the suffering plaintiff had undergone and his inability to lead a normal life, and as illustrated by the chart, mathematically computed what he, plaintiff's counsel, thought was a reasonable sum for the jury to assess for each of these elements of damages. Defendant timely objected to the chart being presented and to *129 the making of a per diem argument for the first time upon rebuttal, and upon denial of these objections, asked for the opportunity to reply to plaintiff's rebuttal. The objections and request were rejected.
Appellee takes the position that reversible error was not committed because:
1. The court by pretrial order determined that mathematical calculations and charts (per diem argument) could be used in final argument, and that he exhibited this chart to opposing counsel prior to arguments.
2. That counsel for Appellee in initial final argument stressed each point of damage and injury claimed; thus, the matter of presenting the chart on rebuttal was not prejudicial in any manner.
Appellee then cites Ratner v. Arrington[2] and Perdue v. Watson[3] as supporting his position for the proposition that the making of a per diem argument in conjunction with charts lies within the sound judicial discretion of the trial judge. We have no quarrel with these decisions. Our concern here is founded upon the nature, function and purpose of closing argument. A trial is not a game to see by what legal stratagem one may procure an advantage over the other. In the early case of Seaboard Air Line Railway v. Rentz, the Supreme Court of Florida speaking through Hocker, J., set out the basic conduct required of counsel in the argument of cases to a jury subsequent to the presentation of evidence and stated:[4]
"The very object of having attorneys is to aid courts in examining the law and in sifting evidence in order that justice may be administered according to law. The purpose of allowing the attorney on whom the burden lies to open and conclude is that in his opening address he shall fairly state his case  the particular evidence, and the law upon which he relies  so that the opposite attorney may have an opportunity to discuss his position. The attorney who has thus opened his case has an opportunity to reply to his adversary. The whole case is thus fairly presented to the tribunal which has to decide it. Of course, no court can regulate with perfect exactness what a lawyer shall say in his opening address; but, if he refuses to fairly open his case, he should not be permitted to reply to his adversary; or, if he is permitted to do so, then the opposite attorney should be permitted to reply to him. To countenance the method adopted in this case might lead to giving one party to a cause a very unfair advantage, and perhaps to injustice."
The reasoning of the Supreme Court is just as sound today as it was at the time this was written. In his initial summation to the jury, counsel for the plaintiff should explore in substance the theories of his case and advance at that time his reasoning in support of same.[5] Opposing counsel then has an opportunity not only to advance the theories and reasoning which favor his client, but also to rebut the argument of plaintiff's counsel. In the normal trial, this is the only opportunity given to defendant's counsel to rebut plaintiff's argument.
Thompson[6] in his text on the law of trials analogizes concluding arguments with the rule applicable to presentation of evidence in rebuttal. He states the rule as:
"It thus appears that the concluding argument sustains an analogy to evidence *130 in rebuttal. Its proper limit is a reply to what has been brought out in the defendant's argument. As the plaintiff (or, in a criminal case, the State) is not allowed to establish its case in chief by evidence introduced for the first time in rebuttal, so the plaintiff's counsel (or the State's counsel) ought not to be allowed, in the concluding argument, to take new ground, to state new points of law, or to read new authorities in support of the positions which he has assumed. But, as the court possesses the power, in the exercise of sound discretion, of permitting evidence which should have been offered in chief to be introduced in rebuttal, provided it has been inadvertently overlooked or not availed of at the proper time by reason of accidental circumstances, to it rests within the sound discretion of the trial court to permit counsel, in their concluding argument, to comment upon matters not referred to by the opposite counsel, and to which the opposite counsel are afforded no opportunity to reply, * *"
The function and purpose of the final argument granted to the one making the opening argument is to offer an opportunity for him to rebut the argument of opposing counsel for this is the only opportunity afforded for such a rebuttal. To permit plaintiff for the first time to trap defendant by briefly mentioning what he plans to argue and then bear down and explore a new method for the edification of the jury in computing damages at a point when the defendant has no opportunity to rebut is not only unfair to defendant but is prejudicial.
Appellee argues that any error was corrected by the court's instruction to the jury that arguments being made were not evidence and the jury could disregard same. In 1857 the same argument was presented to the Supreme Court of Georgia in the case of Garrison v. Wilcoxson,[7] and in this respect we adopt that court's statement, viz.:
"The Court further, as we have seen, charged the Jury, that in determining this question, they were not `to look to the argument of counsel.' Upon this subject, we can lay down no rule with precision. In a very significant sense, they must look to the argument of counsel. Parties have a right to appear by counsel, and it is the privilege of counsel to address the Jury on the facts. If the Jury are to disregard the argument of counsel altogether  if they are to shut their ears to their illustrations, comments and reasonings, how unmeaning, indeed how absurd is the appearance of counsel! It is a most valuable right to be represented by learned and eloquent counsel, not only before the Court, as to the law, but also before the Jury, as to the facts."
In citing the Perdue case, appellee insists that this court allowed the use of mathematical computations on a blackboard using the per diem basis on final summation by plaintiff's counsel over objection by the defendant. We do not find in the Perdue opinion support for this statement. We do find a reference to "A brief portion of plaintiff's counsel's closing argument on the subject * * *" which it is assumed appellee relies upon as the "final summation." The term "closing argument" is used quite extensively as being descriptive of the entire argument to the jury by all parties after introduction of all the evidence in a case. It is noted that Abbott's Civil Jury Trials[8] has an entire chapter entitled "The Closing Argument" which is used in this context. Thus, we interpret the statements "A brief portion of plaintiff's counsel's closing argument on the subject * * *" and a similar statement found in the Retna decision, viz.: "* * * plaintiffs in their closing arguments, of a placard showing items of damages * * *" as referring to the argument *131 made by plaintiff during the first presentation of his closing argument. To give these statements any other meaning would violate the long established and well recognized rights of defendant's counsel to have an opportunity for rebuttal.
It is our conclusion that the trial judge erred in permitting plaintiff to utilize the per diem argument and demonstrative charts for the first time in that part of the closing argument which may be termed as "final summation", "rebuttal argument" or "concluding argument," and that the trial judge's refusal to grant defendant's request to respond to such argument constituted reversible error.[9]
The cause is reversed with directions to grant a new trial.
WHITE, Acting C.J., and ANDREWS, J., concur.

ON PETITION FOR REHEARING
RAWLS, JOHN S., Associate Judge.
In his petition for rehearing appellee Thomas J. Joyce has moved this court to grant a new hearing or to clarify our previous opinion with reference to the granting of a new trial. In this respect, appellee urges that a new trial in this cause should be limited solely to the question of damages sustained by the appellee. We agree.
The trial judge directed a verdict in favor of plaintiff as to defendant being guilty as a matter of law of simple negligence, and thus the sole issue submitted to the jury as to liability concerned the question of contributory negligence, if any, on the part of plaintiff. As to this issue the jury concluded that plaintiff had not been guilty of contributory negligence and we find no error in the proceedings which would require a reversal of the jury's verdict in this respect. It was only as to the method utilized by plaintiff in his final summation to the jury that reversible error occurred, and this error pertained solely to the question of damages.
So, the last sentence in our original opinion is amended to read as follows: "The cause is reversed with directions to grant a new trial on the question of damages alone. Otherwise, the judgment of the trial court is affirmed."
The petition for rehearing is denied.
SMITH, Acting C.J., and ANDREWS, J., concur.
NOTES
[1] Hale v. Adams, Fla.App.1st, 1960, 117 So.2d 524; 138 So.2d 761 (1962); 147 So.2d 165 (1962).
[2] Ratner v. Arrington, Fla.App.3d, 1959, 111 So.2d 82.
[3] Perdue v. Watson, Fla.App.2d, 1962, 144 So.2d 840.
[4] Seaboard Air Line Ry. v. Rentz & Little, 60 Fla. 449, 54 So. 20, 23, 1910.
[5] 93 A.L.R.2d 265 and the note.
[6] Thompson, Trials, Second Edition 1912, page 780.
[7] Garrison v. Wilcoxson, 11 Ga. (Cobb) 154 (Ga. 1857).
[8] Abbott's Civil Jury Trials, Fifth Ed., Viesselman, Chapt. XXII, p. 754.
[9] See State v. Pettibone, Fla. 1964, 164 So.2d 801 which implies that, under a factual situation as here presented, a request to reply should be granted.