## HARRIS, Adjutant General, v. WALSH.

(Court of Appeals of District of Columbia. Submitted November 8, 1921. Decided January 3, 1922.)

### No. 3489.

1. Army and navy ⬦⇒20—Draft regulations protect informants.

The regulation of the president for the operation of the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k). prohibiting search of the records by registrant and others, but authorizing the giving of certain information to the registrants, as interpreted by the notes to such rule, was for the protection of those giving confidential information to the boards, and the right to have an affidavit submitted to the board kept secret is one which can only be waived by the informants.

⬦⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Army and navy ☞20—Protection to informants not limited to war's duration.**

The protection of secrecy guaranteed to those giving confidential information to the draft boards was intended to be perpetual, and was not limited to the duration of the war.

**3. Witnesses ☞298—Transfer of confidential draft records to hands of Adjutant General does not terminate secrecy.**

The fact that an affidavit containing confidential information to a draft board had been transferred to the custody of the Adjutant General does not entitle the registrant to have it made public, and the Adjutant General cannot therefore be required to produce it in court.

**4. Witnesses ☞298—Knowledge of contents of information to draft board does not authorize registrant to use it.**

The fact that a registrant for the draft knew that his wife had made an affidavit giving confidential information to the draft board, and knew the contents of the affidavit, does not entitle him to have the affidavit produced in court.

**5. Witnesses ☞298—Adjutant General cannot be compelled to produce confidential affidavits over protest of informant.**

The Adjutant General of the army cannot be compelled by a draft registrant to produce, in support of the registrant's action for divorce, an affidavit made by the registrant's wife in opposition to his claim for exemption, if the wife resisted such production.

Appeal from the Supreme Court of the District of Columbia.

Proceeding by Harry A. Walsh against Peter C. Harris, Adjutant General of the United States Army, to compel the Adjutant General to produce an affidavit which was in his official possession. From a judgment requiring production of the affidavit, or committing for contempt, the Adjutant General appeals. Reversed and remanded, with directions to vacate the order.

John E. Laskey, Peyton Gordon and Grant T. Trent, all of Washington, D. C., for appellant.

Frederick C. Bryan, of Washington, D. C., for appellee.

VAN ORSDEL, Associate Justice. This appeal is from a judgment of the Supreme Court of the District of Columbia adjudging appellant, Peter C. Harris, Adjutant General of the United States Army, in contempt of court, and requiring him to produce a certain affidavit in his official possession, or stand committed for failure to comply with the order of the court.

The order was made in a divorce proceeding pending in a court of competent jurisdiction in Summit county, Ohio, wherein Harry H. Walsh is plaintiff and Mary H. Walsh is defendant. The subpœna duces tecum issued out of the District Supreme Court, commanding the appellant to appear before a notary public in this city to testify on behalf of the plaintiff and to produce the affidavit in question.

Plaintiff, Walsh, in his petition for divorce, charges neglect of duty and extreme cruelty on the part of his wife, in that she, by filing this affidavit with the draft board at Akron, Ohio, caused him to be inducted into the military service of the United States.

The single question presented is whether appellant is required to

respond to the order of the court and produce the affidavit as therein directed. By the act of Congress of May 18, 1917 (40 Stat. 76), and acts amendatory thereof (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), the President was invested with full power "to increase temporarily the military establishment of the United States." The organization of the selective draft system was left largely to the discretion of the President. The act of Congress declared that the selective draft "shall take place and be maintained under such regulations as the President may prescribe not inconsistent with the terms of this act." Rules and regulations were accordingly promulgated, known as the "Selective Service Regulations." Section 11 of the rules protected from publication "answers of any registrant concerning the condition of his health, mental or physical," without the consent of the registrant, and imposed a severe penalty on any one—

"who shall divulge or impart, to any person not entitled under the foregoing paragraph to receive the same, any information contained in the record as to a registrant's physical condition, or as to his answers concerning dependency."

The rule further provided that—

"The portions of such records as are hereinbefore held to be confidential shall not, without the consent of the registrant, be produced and published in response to any subpœna or summons of any court, except as they may be so produced and published for the purpose of being used in the prosecution of the registrant, or of any person acting in collusion with such registrant, for perjury or for any violation of the provisions of the Selective Service Law or of these Rules and Regulations."

It will be observed that the foregoing are exceptions to the general provision of the rule that—

"All records required by these Rules and Regulations to be filed with and kept by local and district boards, Adjutants General, and other persons in connection with the registration, examination, selection, and mobilization of registrants under the Selective Service Law, and these regulations, shall be public records and shall be open during usual business hours for public inspection of any and all persons."

Section 12 of the regulations provides, as stated in the opinion of the court below:

"That whenever any registrant or other person (except one of the class of persons named in the proviso of the foregoing section 11) applies to a local or district board to inspect any of the records of such boards, such registrant or other person shall not be permitted to search through such records; but it shall be the duty of members or clerks of local and district boards and other persons having the custody of such records to discover, open and point out to the registrant or other person the portion of the record containing the information requested by such person so applying; subject to the limitations as to disclosures provided in the foregoing section 11."

While it may be said that this regulation merely restricts the method by which persons may consult the records, it is further explained by note 2, which, among other things, provides:

"The spirit and intent of the regulation requires board members to be in possession of every available fact touching on or pertaining to cases within their respective jurisdiction. No small amount of such information is confidential. To open to the public such information would be a breach of the

confidence under which persons interested in the successful operation of the Selective Service Law have furnished the information and will discourage giving further information, to the consequent serious impairment of the fair and equitable selection of registrants. The public, therefore, should not be given access to confidential records or reports. A registrant is entitled to access to his questionnaire and to the record in his case, including the record of his physical examination (form 1010, p. 227), but where such records contain statements or letters of a confidential nature, other than those offered by himself, the names of the informants should not, without their consent, be divulged to the registrant, who is, however, entitled to be advised of all statements and allegations which form part of the records in his case. Ample precaution should be taken to prevent a registrant from ascertaining the name or names of persons who have given such confidential information."

It is further provided in section 5 of the Regulations, 2d edition, that—

"All notes contained in these Rules and Regulations are a part thereof and have the same force and effect as the regulations themselves."

[1] The court below seemed to consider the rules as for the sole protection of the registrant, an immunity which, however, he might waive, and which he here tenders himself willing to waive. That construction might be applicable to section 11, but we think section 12 places certain required information beyond even the control of the registrant. It looks to the protection of those furnishing information. While the registrant may secure information as to the contents of affidavits and documents, yet the officers were enjoined to keep secret the names of the informants. While a registrant might have access to his questionnaire and the record in the case, "to be advised of all statements and allegations which form part of the records in his case," the Regulations provide that "the names of the informants should not, without their consent, be divulged," and that "ample precaution should be taken to prevent a registrant from ascertaining the name or names of persons who have given such confidential information." It will be observed that the informant is the one here protected.

Besides, a question of public policy is involved. The President was charged with the duty of hastily bringing into existence a great army for the country's defense. Draft boards were organized throughout the country to aid in this work. There was great temptation to registrants to avoid the draft, and it was essential that the boards should have every possible facility for securing information, and this could be best accomplished by giving assurance that the names of informants should be kept confidential.

[2, 3] Nor was this restriction to continue only during the war. No limitation is fixed in the regulations, and we think none can be inferred. The cloak of protection thrown around these informants was intended to be perpetual. It is, therefore, beside the case that the records have passed into the custody of the Adjutant General for safe-keeping. The same injunction of secrecy is imposed upon him as rested upon the draft boards, and his duty as to giving out information is the same as theirs. It will hardly be suggested that a board would have been justified in divulging the names of informants, merely to enable a registrant to find ground for bringing suit for divorce.

[4] Nor does the fact that the contents of the affidavit are known to the parties and the public alter the case. The court below laid stress upon this point in the following language:

"The application for the production of this document is by the registrant. Any right that he may have had under the regulations in question to the document being considered as confidential, he waives necessarily by his application. There is, as far as the court is advised, no proceeding pending against the affiant of a criminal character. There has been a divorce suit pending between the petitioner herein, the plaintiff in the divorce suit, and his wife. Is the affidavit under those circumstances entitled to be given the scope which is claimed here by the Adjutant General? What public danger is to be apprehended, if the affidavit should be produced in this proceeding? The court does not conceive that the interests of the government would be jeopardized at all. Is it conceivable that there might arise a condition where the court would be justified in refusing to permit a defendant on trial in a criminal case to insist upon the right to know the nature of the criminal act charged? In this case the affidavit is known, the contents are known, the maker is known."

[5] It will be observed that the learned justice fell into error in holding the exclusive right of waiver in the registrant. The right of waiver as to this affidavit is in the informant, who signed and swore to the document. Though its contents are known, and the name of the author is known, the fact remains that it cannot be proved so long as she refuses to waive the privilege, a protection thrown around her by the regulations, which, in this instance, have the force and effect of law, and, so long as she elects to avail herself of the protection which the law thus affords, the Adjutant General, as custodian of the affidavit, cannot be compelled to produce it in court to be used to her disadvantage. What modification of the rule might be indulged, if the registrant were on trial under a criminal charge, and the production of the affidavit were necessary for the protection of life or liberty, it is unnecessary to decide, since that situation is neither before us nor analogous to the instant case.

The judgment is reversed, with costs, and the cause remanded, with directions to vacate the order holding appellant in contempt of court.

Reversed and remanded.