## UNIVERSAL AIRLINE, Inc. v. EASTERN AIR LINES, Inc.

### No. 10501.

United States Court of Appeals
District of Columbia Circuit.

Decided Feb. 23, 1951.

Sheldon E. Bernstein and Nathan L. Silberberg, Washington, D. C., with whom Daniel J. Anderson, Washington, D. C., was on the brief, for appellant.

Richard W. Galiher, Washington, D. C., for appellee.

Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, John H. Wanner, Associate General Counsel, Civil Aeronautics Board, and O. D. Ozment, Attorney, Civil Aeronautics Board, all of Washington, D. C., filed a brief on behalf of the Civil Aeronautics Board as amicus curiae, urging reversal.

Before WILBUR K. MILLER and WASHINGTON, Circuit Judges, and ROBERT N. WILKIN, District Judge (retired) sitting by designation.

WILKIN, District Judge.

This is an appeal from an order of the United States District Court for the District of Columbia which dismissed plaintiff's second cause of action, and from a judgment entered on a verdict in favor of defendant on its counterclaim. The court dismissed plaintiff's second cause of action based on alleged statements of defendant for the reason that it was barred by the statute of limitations of the District of Columbia Code. The case then proceeded to trial on claims by both parties for damages caused by a mid-air collision between passenger planes. The verdict was against plaintiff on its complaint and in favor of defendant on its counterclaim.

This appeal is based upon four main contentions:

1. The verdict and judgment are not supported by the evidence.

2. The trial court erred in dismissing plaintiff's second cause of action.

3. The trial court erred in excluding testimony as to loss suffered by plaintiff from discouragement of trade.

4. The trial court erred in admitting testimony, particularly that of Sidney D. Berman, investigator for the Civil Aeronautics Board.

In support of the fourth contention the Civil Aeronautics Board filed a brief as *Amicus Curiae*.

These grounds of appeal must be considered separately.

1. The Evidence.

■ The collision from which this case arose also gave rise to the case of Kuhn v. Civil Aeronautics Board, 87 U.S.App. D.C. 130, 183 F.2d 839. The known facts were the same in both cases and there was no dispute about them. The conflict was over inferences and arguments based on the facts.

Both planes were en route from Newark, New Jersey, to Miami, Florida. They were using the same airway and cruising at an altitude of 2,000 feet. The appellant's

aircraft, a Douglas DC–3, departed from Newark at 5:07 p. m., and maintained a speed of approximately 150 miles per hour, and appellee's airplane, a Douglas DC–4, departed at 5:22 p. m. and flew at about 200 miles per hour. The plane which left first was given clearance by the New York Airway Traffic Control Center under an Instrument Flight Plan, and the plane departing later was issued clearance under Contact (or Visual) Flight Rules, which required the pilot to guide his aircraft by visual means rather than by instruments. The plane leaving first had the right of way.

The pilot of the DC–4 was informed by the Air Traffic Control Center that the DC–3 had departed fifteen minutes earlier and was proceeding along the same route and at the same altitude as that to be followed by the DC–4. The pilots of the DC–3 had no knowledge of the plane which departed later.

The time when the DC–4 should overtake the DC–3 could have been determined by the DC–4's pilots through ordinary arithmetical computation or by use of standard air navigational aids. At that time the collision occurred. The pilots of appellant's plane, the DC–3, did not see the other plane at any time. The pilot who was operating appellee's plane did not see the DC–3 at any time, but the co-pilot of the DC–4 did see the DC–3 a second or two before the collision, at which time he seized the controls and attempted a maneuver to avoid a crash.

Neither weather nor mechanical difficulties contributed to the the collision in any way. The weather was excellent, flying lights were in operation, and the visibility was from twelve to fifteen miles. For about twenty minutes prior to the collision the DC–3 was "straight and level on course steering between 255° and 260°." About two minutes before the collision the DC–4 made a turn to the left and was on a heading of approximately 230°. With reference to the DC–3, the impact was from the rear and "to the left and mostly forward," and some of the propeller blades on the DC–3 were bent forward by the collision.

It is not for this court to substitute its own views as to the facts for those of the triers of fact below, when there is conflicting evidence. But the evidence in this case is clear and without substantial conflict. It shows that the collision was occasioned by the negligence on the part of appellee's pilots (regardless of the unwarranted inferences and arguments that the DC–3 was off course or had been off course). It is the conclusion of this court, therefore, that the verdict and judgment must be set aside and a new trial ordered.

2. Dismissal of Second Cause of Action.

 This court finds no error in the trial court's dismissal of plaintiff's claim based upon alleged statements of defendant. The second cause of action in the amended complaint did not relate back to the time of filing the original complaint. It set up a new and separate claim. Whether the alleged statements are denominated slander, libel or malicious interference with business, by their nature they come within the purview of the first part of Section 12–201 of the District of Columbia Code [1] and were therefore barred after one year. Since the statements relied on are defamatory in nature, the statute of limitations applicable to libel actions cannot be evaded by referring to the cause of action in some other terms. Lucci v. Engel, Sup., 73 N. Y.S.2d 78. A statute of limitations affects procedure, and it is therefore the statute of the forum that controls. Kaplan v. Manhattan Life Ins. Co., 71 App.D.C. 250, 109 F.2d 463; Wells v. Alropa Corp., 65 App.D.C. 281, 82 F.2d 887.

3. Exclusion of Evidence.

 This court finds no error in the exclusion of evidence offered by plaintiff as to damages resulting from the discouragement of trade. Loss of trade resulting from an accident such as the collision in

1. "No action shall be brought * * * for libel, slander, * * * after one year from the time when the right to maintain

any such action shall have accrued * * *."

this case is considered, as a rule, too general and too remote to come within the measure of damages assessable against a defendant found guilty of negligence. The authorities cited by appellant recognize the general rule that loss of profits may not be admitted in evidence where such profits are the return from capital invested in the business, or are derived from the labor of others, and the facts in this case do not bring it within the exceptions to that rule. 122 A.L.R. 299.

### 4. Error in Admitting Testimony.

The appellant argues that the testimony of two witnesses was inadmissible: (1) Sergeant Caldwell, (2) Inspector Berman.

■ (1) As to Sergeant Caldwell, in view of the undisputed testimony of the pilots of the two planes, the location of the planes at the time of collision, and for some time before, appears to be conclusively established. The testimony of Sergeant Caldwell as to a restricted area where commercial planes could not fly seems irrelevant. There is no evidence to indicate that either plane was over such restricted area. It would seem, however, that the appellant did not object to such testimony, and if it had objected, the testimony could hardly be held to be prejudicial. The only prejudice to appellant was in the inferences and arguments based on the Sergeant's testimony. The testimony as to a restricted area would not support the argument that the DC-3 was off course or "lost"; neither would such testimony support the charge of the court as to the air regulations for aircraft on crossing courses.

The only testimony, other than that of the pilots, bearing upon the courses of the two planes was that of the witness Berman. He said: "I can only say that at collision the longitudinal axes of the two planes were respectively to each other as approximately 74°." Counsel for plaintiff then stated to the witness: "* * * you would know nothing whatsoever as to the relative path of approach of these two planes?" and the witness answered: "That is correct. I would like to make it very clear that the airplanes may be in turning

flight before contact. I know nothing about that. The only thing I know is that at the moment of impact, their axes were approximately 74°." In view of the testimony of the co-pilot of the DC-4 that he had seized the controls and attempted a maneuver to avoid a crash, the testimony of Berman was no basis for the assumption or argument that the DC-3 was off its prescribed course, or in a crossing position. So, even though there was nothing prejudicial in the Caldwell testimony itself, it could not justify the argument and charge mentioned.

■ (2) As to the testimony of Berman, so far as the parties are concerned it was prejudicial error to allow him to testify and demonstrate as to the courses of the aircraft based on his findings of the angle of incidence, since by the undisputed testimony of the co-pilot a violent shift had been made just before the collision.

But there still remains the important question whether it was error to order Berman to testify in spite of his objection and the regulations of the Civil Aeronautics Board, and the further question as to admissibility of his testimony as to (1) his observations, (2) his opinions, and (3) reports of the Board. It was to these issues that the Board addressed its argument and brief, saying at the outset that a determination of the questions would establish a precedent, not only of interest to it, but of great importance to the public.

Berman was an employee of the Civil Aeronautics Board, charged with the duty of personally inspecting the site of aircraft disasters and seeking to determine their cause. The Board's contention is that "the lower court erred in requiring Mr. Berman to testify as an expert witness with respect to the aircraft accident investigated by him solely in his official capacity as an employee of the Board." In its brief the Board says:

"* * * This claim of error is predicated upon (1) the provisions of a Board regulation then in effect precluding expert testimony by Board accident investigators in civil actions, and (2) the provisions of section 701(e) of the Civil Aeronautics

Act which the Board interprets as precluding the admission in evidence in damage suits of expert and opinion testimony by Board investigators with respect to aircraft accidents officially investigated by them." [2]

The Board advances the following five reasons for its policy of withholding information and refusing to permit its investigators to appear as witnesses:

"(1) the obviously correct concept that the Board had been instructed by Congress to investigate aircraft accidents solely for the purpose of gaining the information necessary to prevent the recurrence of similar accidents, and not for the purpose of securing evidence or providing witnesses for the benefit of parties to private litigation,

"(2) the belief that the refusal to release information encouraged frank disclosures on the part of the persons involved and that such disclosures were in the public interest,

"(3) the obvious undesirability of releasing a particular investigator's conclusions which might differ from the subsequent final determination by the Board of the cause of the accident,

"(4) the fact that the conclusions of its investigators often subsequently embodied in the Board's reports would, as a practical matter, influence the determination of the civil liabilities of the parties involved if testified to in damage suits, contrary to the plain purpose and intent if not the letter of section 701(e) of the Act, and

"(5) the number of accidents involving aircraft was such as to require the full time of its experts in investigating them and the public interest dictated that the time of these experts not be consumed by appearance in courts to give testimony in private damage suits."

What the Board sets forth as to its regulations and the provisions of Section 701 (e) of the Civil Aeronautics Act is correct. And the reasons assigned by the Board for its policy are sound so far as the Board and its work are concerned, but the Act and regulations referred to must be considered with reference to the governmental function of administering justice, the judicial power, and the established practice and precedents of our system of jurisprudence.

■ The authority of courts to compel attendance of witnesses in cases pending before them is an essential part of our system of administering justice. In the early stages of Roman and English legal evolution the judicial officer who presided at trials was not much more than a referee, and the conduct of the trial, the production of witnesses, and enforcement of judgments were left to contending parties. [3] But in time such procedure, like trial by battle and ordeal, was abandoned. Government came in time to recognize its supreme interest in the administration of justice for the maintenance of peace. The maintenance of lawful order and the settlement of disputes by judicial process became an essential and basic function of government. English historians [4] refer to such administration of justice as a "sound commodity" which drew to the government the support of the people. Such administration, however, required the use of the summons and the subpoena. [5]

---

2. Section 701(e):
"The records and reports of the [Air Safety] Board shall be preserved in the custody of the secretary of the Authority in the same manner and subject to the same provisions respecting publication as the records and reports of the Authority, except that any publication thereof shall be styled 'Air Safety Board of the Civil Aeronautics Authority', and that no part of any report or reports of the Board or the Authority relating to any accident, or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports." 49 U.S.C.A. § 581.

3. Maitland and Montague: "Sketch of English Legal History," p. 11.

4. Idem, p. 36. Quoted in "The Judicial Function," p. 19 (Michie Pub. Co., 1948.)

5. A similar evolution of judicial procedure occurred in Byzantium and in Russia. Berman, H. J. "Justice in Russia," pp. 124, 135. Harvard University Press (1950).

The function of the subpoena is to compel attendance in order that courts may have all available information for the determination of controversies. It is a necessary and essential part of the "judicial Power" vested by the Constitution in "one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, Sec. 1, Const. of U.S.

The Board's brief as a whole reveals a very commendable attitude on the part of such courts and administrative agencies as have had to deal with the overlapping jurisdiction and impinging activities of administrative boards and courts of law. The courts have recognized the right of administrative agencies to make reasonable regulations regarding their records and reports. Boske v. Comingore, 177 U.S. 459, 469, 470, 20 S.Ct. 701, 44 L.Ed. 846; Harris v. Walsh, 51 App.D.C. 167, 277 F. 569; Ex parte Sackett, 9 Cir., 74 F.2d 922; Louisville & N. R. Co. v. Grant, 234 Ky. 276, 27 S.W.2d 980; Gourley v. Chicago & E. I. Ry. Co., 295 Ill. App. 160, 14 N.E.2d 842; Bachelder v. Woodside, 233 Iowa 967, 9 N.W.2d 464; Lowen v. Pates, 219 Minn. 566, 18 N.W.2d 455. Courts also have upheld regulations forbidding agency employees from testifying in suits between private parties, concerning the contents of secret official records. In re Lamberton, D.C., 124 F. 446; Stegall v. Thurman, D.C., 175 F. 813; United States v. Owlett, D.C., 15 F.Supp. 736. And the Board's brief states that in some of the cases which it investigates its investigators become the only persons competent to testify as to conditions after the accident. The brief says: "* * * it is essential that members of the general public, including the families and representatives of persons involved in the accident, be excluded from the scene of those serious accidents investigated by the Board since important evidence might otherwise be lost. Guards are posted for the purpose of excluding all unauthorized persons. Only Board personnel and persons authorized by them are permitted to make the initial examination of the aircraft concerned or parts thereof, and many portions of the wreckage are removed for the purpose of laboratory testing and examination." In consideration of these facts the Board itself made changes in its policy which permitted release of information and the appearance of its personnel as witnesses in civil cases.

In furtherance of sound public policy, courts have shown a willingness to relieve the agents and officers of administrative boards from the obligation to attend trials between private parties in so far as they can do so without impeding or impairing the administration of justice. Courts have heretofore recognized the purpose and functions of public agencies and have, upon request of such agencies, excused their personnel from the obligation of a subpoena, if the information sought by the subpoena was available from other sources, or could be made available by deposition.

In the present case, the Board states:

"Having consented to the taking of Mr. Berman's deposition, the Board does not here object to his having been required to appear and testify in person to those matters concerning which he had been authorized to testify by deposition. However, it is believed that the Court should have regarded Mr. Berman as unavailable to appear as a witness because permission for such appearance had not been granted by the Board, and accordingly that his deposition, if otherwise proper, should have been admitted into evidence." (Br. 10, n. 12).

As a matter of comity, under circumstances such as those presented here, the trial court should ordinarily receive the deposition of the CAB investigator, rather than order his personal attendance. But we consider that the action taken by the court in the instant case was not erroneous. There was no objection to the personal appearance in court of the witness Berman. (Jt.App. 318). And, as has been noted, the Board does not now object to that portion of his testimony dealing with the facts observed by him, i. e., that portion which was covered in his deposition. We may add that in any case where the CAB investigator is

the sole source of evidence reasonably available to the parties, with regard to the precise position and condition of aircraft after a disaster, we deem it to be incumbent upon the Civil Aeronautics Authority to make his testimony available by deposition or in person; if the deposition is not forthcoming or is insufficient, the court has power to order his personal attendance.[6]

■ The Board contends, however, that it is error to compel an agent of the Board to produce any of the Board's reports, orders, or private files or to testify as to the contents of such private papers. This contention seems sound and supported by the authorities.

■ Moreover, the conclusions or opinions of the administrative agencies or boards or any testimony reflecting directly or indirectly the ultimate views or findings of the agency or board are generally held inadmissible because they would tend to usurp the function of the jury. As Wigmore maintains, the phrase "usurp the functions of the jury" is not accurate, but nevertheless such testimony is inadmissible because it falls within the general rule which excludes hearsay and opinion evidence.[7] The reports of *ex parte* hearings and investigations are generally excluded, not because of danger of "usurpation of the jury's function" but because the evidence is improper and irrelevant, even if the hearing is before a judge sitting without a jury.[8] Such reports, or testimony concerning such reports, would be hearsay based upon hearsay. The rights of parties are to be determined by testimony adduced at the trial according to the rules of examination and cross-examination.[9] It is quite clear that Section 701(e) reveals the intention to preserve the functions of court and jury uninfluenced by the findings of the Board or investigators.

This court therefore concludes that the first assignment of error (1) should be sustained; that the second assignment of error (2) should be overruled; that the third assignment of error (3) should be overruled; that the fourth assignment of error (4) should be sustained in part, subject to the conditions and limitations stated in this opinion.

The judgment of the District Court is therefore reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

6. In construing Section 701 (e) of the Civil Aeronautics Act, Judge Leibell, of the Southern District of New York, in a memorandum opinion in Ritts v. American Overseas Airlines,* said the law did not prohibit "the use of the testimony of a witness examined by the Board in the course of the investigation." Quoted in memorandum opinion in Tansey v. T.

W.A., D.C.D.C., 97 F.Supp. 459. See also Gerow v. Seaboard Air Line Ry. Co., 188 N.C. 76, 123 S.E. 473; Hines v. Kelley, Tex.Com.App., 252 S.W. 1033.

7. Wigmore on Evidence, 3d ed., Vol. 7, Sec. 1920.

8. Idem, Vol. 5, Sec. 1385.

9. Idem, Vol. 5, Sec. 1386.