**John M. BROWN, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, a United States Agency, and Najeeb E. Halaby, Administrator of the Federal Aviation Agency, Respondents.**

No. 15272.

United States Court of Appeals Sixth Circuit.

Nov. 21, 1963.

Joseph A. Gillis, and Philip A. Gillis, Detroit, Mich., for petitioner.

Yvonne H. Behart, for Civil Aeronautics Bd., Washington, D. C., Joeh E. Marsh, for Federal Aviation Agency, Washington, D. C., for respondents, Joseph B. Goldman, Deputy Gen. Counsel, O. D. Ozment, Assoc. Gen. Counsel, Litigation and Legislation, Herbert H. Gliick, Atty., Civil Aeronautics Bd., Washington, D. C., Fritz L. Puls, Assoc. Gen. Counsel, Enforcement Div., Lee Loevinger, Asst. Atty. Gen., Lionel Kestenbaum, Patrick M. Ryan, Attys., Dept. of Justice, Washington, D. C., John H. Wanner, Gen. Counsel, Civil Aeronautics Bd., Nathaniel H. Goodrich, Gen. Counsel, Federal Aviation Agency, on the brief.

Before CECIL, Chief Judge, PHILLIPS, Circuit Judge, and PECK, District Judge.

PECK, District Judge.

This case is presented by appeal under the provisions of Title 49, United States Code, Section 1486, from an order of the Civil Aeronautics Board. By his order of suspension (deemed under the rules of practice before the Board to be in the nature of a complaint) the Administrator of the Federal Aviation Agency found petitioner guilty of violations of three provisions of the Civil Air Regulations and ordered a six-months suspension of his Airman Certificate. Pursuant to that order, under which the Administrator was deemed the complainant and the present petitioner the respondent, the matter came on for hearing before a hearing examiner of the Civil Aeronautics Board. The hearing examiner thereafter filed his initial decision finding a failure to establish the violation charged in one of the specifications, but finding violations as charged in the other two specifications, and reducing the period of suspension to four months. Both the petitioner and the Administrator filed petitions with the Board praying for its discretionary review of the hearing examiner's initial decision, and by its order declining such discretionary review the Board ordered that the initial decision become effective as its final decision. The present appeal is predicated on that order.

■ The record discloses that the petitioner, who was at the time the holder of a valid airman's certificate, was proceeding in an aircraft to Detroit, Michigan, and stopped at Piqua, Ohio, for refueling. Before leaving Piqua, which is forty to fifty minutes flying time from Detroit, he obtained a U. S. Weather Station forecast stating that during that afternoon there would be broken ceiling (i. e., a cloud layer covering five to nine-tenths of the sky) of 2500 feet.

Petitioner proceeded to Detroit, flying under visual flight rules above the cloud layer which became overcast (i. e., a cloud layer covered nine-tenths or more of the sky) on route. Upon arrival he searched for "about an hour" for a hole in the cloud layer, and then contacted Willow Run Approach Control by radio. He advised that he was not qualified to fly on instruments and had only an hour fuel supply remaining. After some discussion, Approach Control arranged for a commercial airliner to rendezvous with petitioner and guide him in, which resulted in his safe landing. During this operation petitioner was in radio contact with the airline pilot, and their conversation was monitored by Approach Control.

Petitioner was charged with a violation of Section 60.11 of Civil Air Regulations in failing to check available weather forecasts and reports, but it was this specification which the hearing examiner's initial decision found had not been established by reliable and probative evidence. The second specification alleged a violation of Section 43.65 of Civil Air Regulations, and charges that petitioner flew in weather conditions less than the minimums prescribed for flight under visual flight rules while he did not hold a currently effective instrument rating. (The lack of such a rating is conceded.) The remaining specification charges a violation of Section 60.12 of Civil Air Regulations for operating his aircraft on top of cloud layer under visual flight rules and becoming involved in instrument flight without having a valid instrument rating and thereby operating his aircraft carelessly so as to endanger the life and property of others.

It is petitioner's principal argument, to a large extent permeating his other contentions, that he was in no way careless or negligent, and that he has been charged and found guilty of violations of regulations because he relied on an official weather forecast which proved inaccurate, and in making the landing that was ultimately accomplished he followed the instructions of proper authorities. This fails to take into account the fact that petitioner spent an hour over Detroit before contacting those authorities at a time when he still had an adequate fuel supply to make alternate destinations available, and in any event does not here justify a vacation of the Board's adopted findings. Section 1486(e), Title 49, United States Code provides that such a finding shall be conclusive if supported by substantial evidence, and such substantial evidence is here found to exist. Similarly, it is here concluded that substantial evidence exists in the record to support the finding that at least part of the operation occurred in weather conditions less than the minimums prescribed for flight under visual flight rules.

The petitioner further argues, in effect, that even had his operation been careless or reckless it could not have endangered "the life or property of others" within the meaning of Section 60.12, Civil Air Regulations, because he was flying his own aircraft. This argument fails to take into account the fact that, assuming carelessness and negligence, the life of petitioner's passenger was definitely endangered, as were the lives and property of other operators and passengers in aircraft in the vicinity. And if it be conceded that radar control afforded the latter full protection from mid-air collision, the fact remains that the lives and properties of others in the vast metropolitan area over which petitioner was operating were endangered.

At the hearing before the Board's examiner, the chief controller of the Detroit Willow Run and Detroit Metropolitan Control Towers testified that it was "standard procedure" to record communications between pilots and that the conversation between petitioner and the commercial airline pilot hereinabove referred to was so recorded. Testimony from this source was then received, and petitioner claims that such use is prohibited by Section 605, Title 47, United States Code. That section provides that it shall not apply "to the receiving, divulging, publishing, or utilizing the contents of any radio communication broadcast, or transmitted by amateurs or others for the use of the general public, or relating to ships in distress," and this provision would appear to make the use complained of permissible. However, that determination need not be here made because the channels used for the conversation at issue were authorized aeronautical frequencies. The assignment of these frequencies is for the purpose of permitting communications between traffic control personnel and pilots, and between pilots, and no element of privacy is involved. Pilot and tower conversations are permissible evidence in proceedings such as the one here involved (Specht v. Civil Aeronautics Board, 254 F.2d 905 (C.A.8, 1958)) and

in civil suits involving aircraft accidents (Universal Airline v. Eastern Air Lines, 88 U.S.App.D.C. 219, 188 F.2d 993 (1951); Eastern Air Lines v. Union Trust Company (United States v. Union Trust Company), 95 U.S.App.D.C. 189, 221 F.2d 62 (1955), affirmed in part, 350 U.S. 907, 76 S.Ct. 193, 100 L.Ed. 799). The procurement and use of information from such a source as here involved does not fall within any prohibitions against "wire tapping."

The order appealed from is affirmed.