**Walter LOGAN, Plaintiff, Appellant,**

v.

**EMPRESA LINEAS MARITIMAS AR-GENTINAS et al., Appellees.**

**JARKA CORPORATION OF NEW ENG-LAND, Third-Party Defendant, Appellant,**

v.

**EMPRESA LINEAS MARITIMAS AR-GENTINAS, Third-Party Plaintiff, Appellee.**

Nos. 6536, 6546.

United States Court of Appeals First Circuit.

Dec. 9, 1965.

Nathan Greenberg, Boston, Mass., for Walter Logan.

Robert J. Hallisey and Hiller B. Zobel, Boston, Mass., with whom Francis H. Fox and Thomas H. Walsh, Jr., Boston, Mass., were on brief, for Empresa Lineas Maritimas Argentinas.

Thomas D. Burns, Boston, Mass., with whom Richard D. Sears, III, Boston, Mass., was on brief, for Jarka Corporation of New England.

Before ALDRICH, Chief Judge, HAMLIN, Senior Circuit Judge,* and McENTEE, Circuit Judge.

HAMLIN, Senior Circuit Judge.

Walter Logan, appellant herein, filed an action for damages in the Massachusetts Superior Court against Empresa Lineas Maritimas Argentinas, appellee herein. The action was removed to the United States District Court for the District of Massachusetts by appellee. In his complaint, appellant in two counts sought recovery based upon negligence and unseaworthiness for personal injuries sustained on or about October 31, 1963, while working as a longshoreman on the S. S. Rio Bermejo, a vessel owned and operated by appellee. When appellee filed its answer denying negligence and unseaworthiness, it also brought in Logan's employer, Jarka Corporation of New England, as a third-party defendant. Prior to trial, appellant waived his negligence count and the case was tried

* Sitting by designation.

before the district court and a jury on the unseaworthiness count.

The evidence disclosed that appellant was a longshoreman employed by Jarka and was a member of a gang discharging bales of wool from the S. S. Rio Bermejo. During the discharging of this cargo, Logan fell through a hatch to the lower hold and sustained certain personal injuries.

The theory of Logan throughout the trial was that the hatch board which fell into the lower hold at the same time that Logan fell was short, and that by reason thereof the ship was unseaworthy.

Certain special questions were submitted by the district court to the jury and, based on the jury's answers to these questions, the court directed that a verdict be entered in favor of appellee on the principal action and a conditional judgment in favor of Jarka on the third-party action. Appellant has timely appealed to this court which has jurisdiction under 28 U.S.C. § 1291.

Appellant contends that the district court erred in the following particulars: (1) In denying appellant's request for certain instructions to the jury; (2) in failing to rule as a matter of law that appellee was liable for unseaworthiness; (3) in failing to inform appellee of its proposed action respecting his requests for instructions; (4) in requiring a witness employed by the Department of Labor to testify over the objection of that department; and (5) that he was denied a fair and impartial trial because of prejudice and hostility allegedly expressed by the district court against appellant and his counsel.

In submitting the special questions to the jury the court stated as follows:

"A. Was the injury to the plaintiff Logan due to one or more of the following causes:

1. The hatch cover board was short of the proper length.

2. The hatch cover board was dislodged by being dragged out of place by the stevedoring operations.

3. The hatch cover fell for unexplained reasons.

You will be asked to check figure 1, 2 or 3, or any combination of them. The second main question will be:

B. What were the total damages suffered by the plaintiff Logan which were attributable to the fall he suffered on October 31, 1963. (Answer in dollars)

C. Was the plaintiff Logan contributorily negligent. (Answer 'Yes' or 'No')

D. If you answered 'Yes' on 'C', what proportion of the total causes of the accident is attributable to the contributory negligence of Plaintiff Logan. (Answer in percentage figures)"

The jury answered these questions as follows:

A–3. The hatch cover fell for unexplained reasons.

B. $60,000

C. No.

To Question "D" no answer had been given by the jury. After the jury had answered the above questions, the court called counsel for a discussion at the bench. The court stated that it was going to put a further question for the jury to answer. This question was as follows: "Was the hatch cover reasonably fit for its intended purpose, that is, was the ship 'seaworthy' as the court has defined that term? Answer 'Yes' or 'No.'" The court then stated that it would give counsel on either side a brief opportunity to argue further to the jury, after which the question was submitted to the jury and they again retired. After deliberation, the jury answered "Yes" to the last-above-stated question. Following this action the court stated that it would enter a verdict for the appellee and a conditional verdict for Jarka on the third-party action.

No witness testified to actually having seen the entire accident. Logan was seen falling through the air, but no witness saw what caused him to fall. Logan

himself said that the board must have been short, although he did not himself see that it was short. A strong attack was made by appellee upon appellant's credibility by reason of certain contradictory statements that it was claimed appellant made about other accidents in which he had claimed and collected damages. Very shortly after the accident happened, a witness examined the hatch board in question and found that it was not short and that it fitted tightly into its proper place.

Appellant's first contention is that the court erred in failing to give to the jury the following instructions requested by him:

"3. If the jury finds the hatch board that the plaintiff stepped on dislodged and fell to the lower hold; the jury is warranted in finding the defendant liable for unseaworthiness."

"5. If the jury finds the hatch board was dislocated and/or not secure before the accident and the hatch board gave way when the plaintiff stepped on it; the jury is warranted in finding the defendant liable for unseaworthiness."

"1. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. That is to say, the shipowner is liable for all injuries and consequent damages proximately caused by an unseaworthy condition existing at any time, even though the owner or operator may have exercised due care under the circumstances, and may have had no notice or knowledge of the unseaworthy condition which proximately caused the injury or damage."

In reference to requested instructions Numbers 3 and 5, it is to be noted that the court in its charge did not ask the jury to make a finding of liability. They were asked to answer specific questions submitted to them. This not only was entirely proper, but the record also shows no objection by appellant to these questions. Inasmuch as instructions Numbers 3 and 5 contained the language "the jury is warranted in finding the defendant liable * * *," they were inappropriate under the circumstances, and there was no error in refusing to give them to the jury.

Similarly, the failure to give appellant's instruction Number 1 was not error. The fact that the issue of negligence was not in the case was pointed out by the court in its instructions, which were inter alia as follows:

"* * * There is a suit by Mr. Logan, the injured longshoreman, against the Argentine Steamship Line, which owns and operates the vessel on which he was injured the 31st of October, 1963, a year and a half ago.

*      *      *

"Let us begin with some matters which will not have to be resolved by you. There is no dispute that on this day, October 31st, 1963, Mr. Logan was a longshoreman who was an employee of the Jarka Company, and he is not suing his employer. You are not in the least bit concerned with what rights, if any, he has against his employer. That is not before you.

"There is no doubt that he quite lawfully was on the ship on which he was admittedly injured. He was there as an employee of the stevedoring company, the Jarka Corporation, which had a contract to unload the vessel, which was owned and operated by the steamship company. He had just as much right to be there as though he were a passenger on the vessel.

"There can be no doubt that he was injured on the vessel. No one disputes that he fell through the hatch and was very gravely injured. The mere fact that he was injured does not, by itself, entitle him to recover anything from the steamship company.

*      *      *

"Likewise, the longshoreman, the stevedore, when he goes on a vessel

has a right to have a seaworthy vessel.

\* \* \*

"In order to recover for an injury which he sustains on the vessel, the longshoreman must show that the injury was caused by the unseaworthiness of the vessel.

"By agreement of counsel we are not dealing with any problem of negligence here. We are dealing with the broader problem of unseaworthiness.

"Now, laymen, when they think of a vessel being seaworthy or unseaworthy, probably ask themselves, 'Has this vessel a hole in the hold?' In other words, your natural lay attitude is, seaworthiness and unseaworthiness have something to do with whether the vessel or its operation is appropriate as you navigate the high seas.

"The word 'seaworthiness' as used in this branch of the law has a very much broader, more comprehensive scope. The duty which a shipowner/operator has is to provide a vessel which in all its parts, its equipment, its gear, and so forth, is reasonably fit and proper for the use for which that part of the vessel or its equipment is intended. \* \* \*

"So, seaworthiness does not mean only is the ship ready to go on the high seas; it means is the ship so equipped in all its parts as to be reasonably fit and proper for the use of these parts."

■ Logan's contention that instruction Number 1 is a correct statement of the law does not help him. A judge is not required to instruct a jury in the exact language as suggested by a litigant. Alexander v. Kramer Bros. Freight Lines, Inc., 273 F.2d 373 (2d Cir. 1959). The court's instructions as set out above properly defined seaworthiness and pointed out appellant's right to a seaworthy vessel. As long as the court's instructions properly covered the law involved, we see no error in his

failing to give appellant's requested instruction Number 1.

Appellant's next contention is that the court erred in failing to rule as a matter of law that appellee was liable for unseaworthiness.

■ The mere happening of an accident does not in itself establish unseaworthiness. Mosley v. Cia. Mar. Adra, S. A., 314 F.2d 223 (2d Cir.), cert. denied, 375 U.S. 829, 835, 84 S.Ct. 73, 52, 11 L.Ed.2d 61, 65 (1963); Jefferson v. Taiyo Katun K. K., 310 F.2d 582 (5th Cir. 1962), cert. denied, 372 U.S. 967, 83 S.Ct. 1091, 10 L.Ed.2d 130 (1963); Nuzzo v. Rederi, etc., 304 F.2d 506 (2d Cir. 1962); Richter v. Mathiasen's Tanker Industries, Inc., 297 F.2d 494 (2d Cir. 1961), cert. denied, sub. nom. Pinto v. States Marine Corp. of Delaware, 369 U.S. 843, 82 S.Ct. 874, 7 L.Ed.2d 847 (1962).

■■ The burden is on a plaintiff to establish unseaworthiness. In this case the appellant contended that the vessel was unseaworthy because the hatch board was short. However, there was testimony, as indicated above, that right after the accident the hatch board was examined, measured, and found not to be short but to fit tightly in place. Appellant did not introduce any evidence which would compel the conclusion that the accident could only have occurred through a defect in the hatch board. Under these circumstances, it was not error for the court to fail to direct a verdict in appellant's favor.

■ Appellant next contends that the district judge erred in failing to inform appellant of his proposed action respecting appellant's requests for instructions as required by Rule 51, Federal Rules of Civil Procedure. The record shows that after appellant had submitted his requested instructions to the court there was a conference between the court and counsel in the absence of the jury. In the course of this conference the following occurred:

"Mr. Greenberg: Well, I hope Your Honor will read my requests.

"The Court: You do not think that I am going to read them to the jury?

"Mr. Greenberg: I know you're not."

Certainly after these comments appellant is in no position to say that he did not know what action the court was going to take as to appellant's request for instructions. If appellant needed any further information he should have asked for it.

■ Appellant next claims that the court committed prejudicial error in requiring a witness, Edward Garvin, to testify as to his personal observations on the vessel shortly after the accident in question. Garvin was subpoenaed by appellee.

Prior to his taking the witness stand there was a colloquy between counsel, Mr. Ross, an attorney for the Department of Labor, and the court, the pertinent portions of which are set out in the margin.[1] He testified that he was a maritime safety officer with the United States Department of Labor, and that it was his duty to administer and enforce the safety code as to longshoring operations under Public Law 85–742, 72 Stat. 835. He received a call that there had been an injury on board the Rio Bermejo and he went down there to investigate. He then testified that he examined a hatch board that had been pointed out to him as the one which had fallen when appellant was injured. He testified that this hatch board was then fitted into place, that it was not short but that "it was very tight." He produced no records and referred to no information, facts or other matter that had been entrusted to him in confidence. We see no error in the action of the court in the admission of this testimony.[2]

■ Appellant's final contention is that the district court exhibited prejudice and hostility against him and his counsel to the extent that he was denied a fair and impartial trial. This is a serious charge and we have examined the record carefully to ascertain if it has any merit. The record shows that on

1. "Mr. Greenberg. Your Honor, there was a summons served on Mr. Garvin of the Department of Labor by my Brother. The attorney for the Department is here and he and Mr. Garvin are concerned about having Mr. Garvin testify. And he tells us that the Department tries to maintain a position of complete neutrality.

"The Court. There is nothing unneutral about telling the truth. You have to testify.

"Mr. Ross. If Your Honor please, I am an attorney for the Department of Labor, and I would like to state for the record our position in respect to this matter:

"Mr. Garvin is here in response to a summons served upon him. The regulations of the Department, which have been issued and in effect since 1915, which I know Your Honor is familiar with, 5 U.S.C. 29(a) Pt. 2, Sec. 2.11 reads:

"'In response to a subpoena duces tecum or ad testificandum no officer or employee of the Department shall give testimony or furnish to the court any documents which disclose confidential information.'

"And further, 'If served with a subpoena, such officer or employee shall appear in court and respectfully refuse to testify or furnish such records and information, basing his refusal on the grounds that he is not the custodian of records and information.'

"The Court. Well, he is not being called in here to bring with him some document, Mr. Ross. Let's not go into that. That is not relevant.

"Mr. Ross. Your Honor, the situation is such that all the information obtained by this investigator was made by him during the course of his official investigation conducted as an agent or officer of the Department.

"The Court. It seems that the Government of the United States thinks everybody else is different. They could learn that in my court they are treated equally, and without any preference."

2. In his brief appellant relies on Universal Air Line, Inc. v. Eastern Air Lines, Inc., 88 U.S.App.D.C. 219, 188 F.2d 993 (1951), and Appeal of the United States Securities and Exchange Commission, 226 F. 2d 501 (6th Cir. 1955). An examination of these cases shows that they are inapposite.

several occasions the conduct of appellant's counsel was highly objectionable and that on some of these occasions the district court reprimanded him therefor. Apparently appellant's counsel realized that his conduct had been improper because he stated in his argument to the jury:

"If I might have done anything funny with respect to Judge Wyzanski that I shouldn't do, and if I have done anything here, I apologize. I apologize for whatever I have done. I am not perfect, members of the jury."

A district judge is not required to remain silent while counsel engages in improper conduct before the jury. An examination of the record does not disclose any actions of the district judge that denied to appellant a fair and impartial trial. The improprieties were counsel's, and these were compounded by the argument made in this court.

Judgment of the district court in No. 6536 is affirmed as is the judgment in No. 6546.