**AMIGOS BROADCASTING, INC., Successor in Interest to Radio Laredo, Inc., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Laredo Broadcasting Company, Inc., Intervenor.**

**No. 82–1236.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 24, 1982.
Decided Dec. 28, 1982.

Kathryn R. Schmeltzer, Washington, D.C., with whom Martin R. Leader, Washington, D.C., was on the brief, for appellant.

Gregory M. Christopher, Atty., F.C.C., Washington, D.C., with whom Stephen A. Sharp, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on the brief, for appellee.

Christopher J. Reynolds, Washington, D.C., was on the brief for intervenor.

Before MacKINNON, MIKVA and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

The question this case presents is whether congressional ex parte contacts so tainted the award of a radio license as to require a remand for a reopening of the agency record. We hold that the agency decision can stand.

Two competing applicants, Amigos Broadcasting, Inc. (Amigos) and Laredo Broadcasting Company (LBC), sought a construction permit for a new FM radio station in Laredo, Texas. Despite the fact that their applications were filed with the Federal Communications Commission (FCC or Commission) in September 1977, it was not until July of 1981 that the Commission's Review Board (Board) made a decision to grant the permit to LBC on the basis of its superior application. In the spring of 1981, after the administrative law judge had made his decision but before the Board had reached its conclusion, members of a United States Senator's staff contacted, both by mail and telephone, decisionmaking personnel at the FCC on LBC's behalf, ostensibly to determine how much longer the review process would take. On the basis of these contacts, Amigos petitioned the Board to reopen the record and to hold a hearing to determine the exact nature of those contacts. After finding that Amigos had failed to make out a prima facie case of disqualification, the Board concluded that LBC's "overwhelming comparative advantage" rendered any comparative demerit the Board might award of no decisional significance and denied the request. Although we must affirm the decision not to reopen the record, we are troubled by the manner in which the Board reached its conclusion and limit our holding to the facts of this case.

The Commission has adopted very explicit rules on ex parte communications. Interested persons are prohibited from making or soliciting any oral or written ex parte communications that go to the merits or outcome of a proceeding. 47 C.F.R. §§ 1.1221, 1.1223, 1.1225 (1981). Status inquiries are permitted by interested persons, but those same persons are prohibited from soliciting others to make the same inquiries. 47 C.F.R. § 1.1227(e) (1981). The reason for prohibiting those solicitations is clear. If acted upon, they raise doubts whether "the purpose of the inquiry is to obtain information or to inform the Commission that prominent persons are taking an interest in a particular application," *Fine Music, Inc.,* 8 F.C.C.2d 529, 530 (1967), and undermine public confidence in the fairness of the Commission proceedings.

Although the Commission is concerned that a status inquiry by a prominent person might affect the decisionmaking process, it has made a necessary exception to the prohibition of ex parte contacts for congressional inquiries directed to administrative delay. In the leading case of *Fine Music, Inc.,* 8 F.C.C.2d 529 (1967), the Commission explained:

> Congressional committees have long had oversight in [the area of administrative delay], and the question of administrative delay is well established as a proper subject of communication between a party and a Congressman and between a Congressman and the Commission. The ex parte rules are not designed, and could not properly be designed, to shield the Commission from such complaints, except as the time of action may affect the merits or outcome of a restricted proceeding.

*Id.* at 530 (footnote omitted). This exception has been upheld by the Commission on several occasions, *see, e.g., The New Continental Broadcasting Company,* 87 F.C.C.2d 517 (1981); *Stearns County Broadcasting Company,* 71 F.C.C.2d 412 (1979); *Northeast Oklahoma Broadcasting, Inc.,* 42 F.C.C.2d 237 (1973); *Azalea Corp.,* 10 F.C.C.2d 364 (1967); *Corinth Broadcasting Company, Inc.,* 9 F.C.C.2d 864 (1967), and was, in fact, cited by the Board when it denied Amigos' request to reopen the record in this case, *Radio Laredo, Inc.,* 88 F.C.C.2d 901 (1981).

The Commission has also adopted explicit rules to deal with ex parte communications if they do occur. The procedures differ, though, depending on whether the ex parte communications are written or oral. All

written ex parte communications are forwarded to the Executive Director and are placed in a public file for perusal by the parties. 47 C.F.R. § 1.1241 (1981). Any impropriety or appearance thereof becomes part of the record. Not all oral ex parte communications are summarized for the Executive Director and placed in a public file, however. In fact, not every ex parte phone call is logged. Commission rule 1.1243, 47 C.F.R. § 1.1243 (1981), requires only that oral ex parte communications that go "to the merits or outcome of a proceeding" be given the same treatment as all written ex parte communications. *See* 47 C.F.R. § 1.1201(f) (defining "ex parte presentation").

It is in this legal setting that the Board considered the question whether the letters sent and the telephone calls made by members of the Senator's staff to decisionmaking personnel at the Commission in response to direct and indirect solicitations by the president of LBC violated the Commission's ex parte prohibitions or came within the *Fine Music, Inc.* exception. In making its decision, the Board had copies of the letters before it because they were part of the public record; because the calls were not, they remained a mystery. The Board had no information, not even affidavits from the FCC staff members who received the calls, as to how many calls were placed or the nature of the discussion during those calls. It could only assume, therefore, that because there was nothing in the public file the calls were not prohibited.

The different treatment the Commission accords oral ex parte communications is troubling for several reasons. In the first place, oral communications are inherently more difficult to reconstruct than are written ones. Secondly, under the Commission's rules, status inquiries by Congressmen that do not address administrative delay are illegal, 47 C.F.R. § 1.1227(e) (1981); *Fine Music, Inc.*, 8 F.C.C.2d at 530 n. 1, but need not be placed in a public file, 47 C.F.R. § 1.1243 (1981), and are thus shielded from the public eye. Finally, one of the reasons the Commission decided to allow congressional inquiries directed to administrative

delay was that the inquiries would be part of the public record and thus less likely to affect the outcome of those proceedings. *See Fine Music, Inc.*, 8 F.C.C.2d at 530 ("Of course, all such complaints and inquiries are placed in a public file associated with the docket."). We acknowledge that ex parte contacts by Congressmen are not likely to stop, but we note that the dictates of propriety require that some procedures be developed by the Commission for dealing with them. Should the Commission fail to do so, parties must be free to subpoena members of the Commission's or Congressman's staff to obtain affidavits or other evidence attesting to the nature of the oral ex parte communications. *See generally Hutchinson v. Proxmire*, 443 U.S. 111, 121 n. 10, 99 S.Ct. 2675, 2681 n. 10, 61 L.Ed.2d 411 (1979); *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972); *Universal Airline v. Eastern Air Lines*, 88 U.S.App.D.C. 219, 188 F.2d 993, 999 (1951).

Having said all this, however, we must affirm the result in this case. Under Commission rule 1.229, 47 C.F.R. § 1.229 (1981), the burden of going forward with the evidence to enlarge the issues in this case to include ex parte contacts rested squarely with Amigos. Having determined that LBC's overall comparative advantage was overwhelming, the Board was certainly within the bounds of its discretion when it held that, unless Amigos could make out a case for disqualification, a hearing on the issue of what type of demerit to give was unnecessary. Amigos was unable to meet that burden because it could show no evidence of intent to affect the outcome. Thus, although we can hardly commend the Board's procedures and less-than-searching review, we hold that given the facts of this case the Board did not err in denying Amigos' petition.

*Affirmed.*